**WESTERN ADDITION COMMUNITY ORGANIZATION et al., Plaintiffs,**

v.

**Frank N. ALIOTO et al., Defendants.**

**No. 701335.**

United States District Court,
N. D. California.

Jan. 8, 1971.

Sidney Wolinsky, Robert Gnaizda, Oscar Williams, NAACP Legal Defense, Hector Ortiz, and Louis Garcia, San Francisco, Cal., for plaintiffs.

Thomas M. O'Connor, Davis, Cowell & Bowe, Brundage, Neyhart, Grodin & Beeson, and William J. Murphy, San Francisco, Cal., for defendants.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

This is a civil rights action brought pursuant to the provisions of Title 42 U.S.C. §§ 1981 and 1983 seeking injunctive and declaratory relief. The jurisdiction of this court is invoked under Title 28 U.S.C. § 1343(3) and (4), Title 28 U.S.C. §§ 2201 and 2202, and Title 28 U.S.C. § 1337.

Plaintiffs, Western Addition Community Organization, National Association for the Advancement of Colored People and the Mexican-American Political Association, all non-profit corporations existing for the purpose, among others, of eliminating racial discrimination in employment, bring this action on behalf of all Negro and Mexican-American San Francisco area adults fully qualified to be firemen with the San Francisco Fire Department but who are allegedly barred from such profession due to their inability to maintain a sufficiently high score on the written examination administered by defendants as a prerequisite to such occupation in San Francisco; also on behalf of all Negro and Mexican-American San Francisco adults desirous of having their homes protected by an integrated fire department.

The action is presently before the court on plaintiffs' motion for a preliminary injunction restraining defendants from further reliance upon written examinations of the kind used at the 1968 Fireman Class H2 Civil Service examination upon the ground that said written examination requirement violates the rights of certain civil service applicants, i. e., Negro and Mexican-American applicants, to due process and equal protection of law under the 14th Amendment to the Constitution of the United States.[1]

## THE FACTUAL BACKGROUND

As positions with the San Francisco Fire Department in the Fireman Class H2 become available they are filled from a list of applicants certified as eligible

---

1. Plaintiffs also sought an order restraining defendants from filling any further Fireman H2 positions from the current list of eligibles certified from the 1968 examination; however, that request was denied by this court on August 24, 1970.

by the defendant Civil Service Commission.[2]

The determination of eligibility for a position with the fire department is made by defendants on the basis of an applicant's performance on a six part test.

The 1968 examination was broken down into a test of physical measurement, a test of athletic ability, a medical examination, a qualifications appraisal, an employment, character and background investigation and a written examination.

Only the score on the written examination determines a qualified applicant's relative position on the certified list of eligibles; success on the other five parts determines an applicant merely "qualified."

The current list is comprised of persons who successfully completed the 1968 Fireman H2 examination; the list of eligibles was certified on August 5, 1969 and will expire in August, 1971.

Of the 1883 potential applicants who took the 1968 written examination for Fireman H2, 101 were Negro and 69 were Mexican-American. A total of 662 applicants passed the written examination, of this number 12 were Negro and 24 Mexican-American.

Ultimately, 350 persons qualified on all further tests to be certified on the list of eligibles, of this number 3 are Negro and 14 Mexican-American.

Plaintiffs allege that only approximately the first 160 persons on the list of eligibles have any real chance of selection to the fire service during the lifetime of the list; only four Mexican-Americans and no Negroes are ranked within the top 160 on the current list.

In terms of percentages it appears that of the 1883 applicants who took the written test in 1968 approximately 662, i. e. 35% passed; of the 101 Negroes who took that test approximately 12, i. e. 12% passed; of the 69 Mexican-Americans who took the test approximately 24, i. e. 34% passed; of the remaining 1713 who took the test approximately 626, i. e. 36% passed.

Of the 1800 firemen currently employed by the San Francisco Fire Department only 4 are Negro, although according to recent statistical data for the City and County of San Francisco, Negroes constitute approximately 14% of the City's adult population.

Plaintiffs contend that the written test used by defendants in determining eligibility for service with the fire department consists mainly of questions commonly found in group intelligence tests and scholastic achievement tests; that about 52 percent of the questions on the 1968 examination bear no particular relevance to firefighting and are not practically related to the skills necessary to adequately perform that job. (See Affidavit of Davison attached to plaintiffs' reply to memorandum filed July 28, 1970).

An examination of the 1968 Fireman Class H2 written examination [3] used by

---

2. Under the San Francisco City Charter the list of eligibles for any civil service position is to be determined on the basis of performance on competitive examinations; the examinations may be written, oral, mechanical or physical or any combination of these provided the examinations are "practical in character and related to matters fairly to test the relative capacity of the applicants for the positions to be filled." Section 145 of the San Francisco City Charter. Acting pursuant to Section 145 the San Francisco Civil Service Commission promulgated Section 1, Rule 4 of the Civil Service Rules which provides:

"Examinations shall be practical in character and shall relate to those matters which will fairly test the relative capacity of the persons examined to discharge the duties of the positions to which they seek to be appointed. All examinations shall be absolutely impartial * * *."

Under Section 148 of the City Charter the Civil Service Commission is required to certify the applicant standing highest on the list of eligibles for the civil service position to be filled.

3. A copy of this 1968 examination was lodged by defendants for in camera reading by the court and is the court's sealed Exhibit 1 in the record.

defendants discloses that it is comprised of questions covering a broad range of topics; the primary emphasis is placed on mathematics, verbal skills and reading comprehension—about 47 percent, we estimate, of the test questions. About 16 percent of the questions require a general knowledge of mechanics and the physical properties of various materials. About 11 percent involves basic chemistry and physics problems. About 13 percent of the test consisted of questions dealing with responses to situations with which a fireman might be confronted; and about 13 percent involved questions requiring a knowledge of bodily functions and basic first aid principles.

## THE LEGAL ISSUE

Of course, general aptitude tests of the kind here used are permissible if there is a reasonable relationship between the aptitudes tested and the demands of the work to be performed; a hiring practice thus related to ability to perform is not unfair even if it means that disadvantaged minorities are in fact adversely affected.

On the other hand, where the hiring practice of a public agency (even though it does not intend to discriminate against minority groups) has the *effect* of producing a de facto pattern of racial discrimination, such a discriminatory effect, although it does not necessarily render the method of selection constitutionally defective, does render the method of selection sufficiently suspect to make a prima facie case of unconstitutionality.

Under such circumstances the burden shifts to the public agency to justify the use of such generalized hiring tests by showing some rational connection between the qualities tested by the written examination and the actual requirements of the job to be performed.[4]

In this case, plaintiffs have shown that the percentage of minority-group persons employed by the Fire Department is grossly and disproportionately less than the percentage of minority-group persons in the general population of the area. Thus, whatever may have been the good intentions of defendants, there is a prima facie case for predicating employment discrimination *unless* defendants justify the selection method by showing a reasonably necessary connection between the qualities tested in the

---

4. See, Arrington v. Massachusetts Bay Transportation Authority, 306 F.Supp. 1355 (D.C.Mass.1969), wherein minority group applicants for positions as drivers and collectors with the Transit Authority, a public agency, brought a class civil rights action, claiming that defendants' practice of selecting applicants in order of performance on a General Aptitude Test resulted in upper two-thirds placement of only 20 out of 300 black applicants (20%) compared with 75 percent of white applicants. See also, United States v. H. K. Porter Co., 296 F.Supp. 40, 65 (D.C.Ala.1968); Penn v. Stumpf, 308 F.Supp. 1238 (N.D.Cal.1970) (Levin, J.).

Our Ninth Circuit has held that, where the *effect* of a city zoning practice is to deny equal opportunity to minority groups, such a discriminatory result, itself, and regardless of motivation, presents a substantial constitutional question because, according to the Ninth Circuit, it is the responsibility of a city and its officials to see that city practices, as initiated or as they develop, accommodate to the needs of minority groups. See,

Southern Alameda Spanish Speaking Organization (SASSO) v. City of Union City, 424 F.2d 291 (1970), a zoning case followed and applied by this court in its subsequent decision (No.Dist.Cal. July 31, 1970).

In Griggs v. Duke Power Co., 292 F. Supp. 243 (M.D. North Carolina 1968), a suit brought under the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq., which is not applicable to public agencies, the court held that under Section 2000e–2(h) of the Act, a private employer hiring procedure, if professionally developed, may utilize general intelligence tests even though unrelated to the particular job to be performed, provided the test is not designed, intended or used to discriminate because of race. In our pending case, however, a public agency, not a private employer is involved and, there is no claim that the written examination currently used by defendants has been professionally developed or validated. We feel obliged to follow the rationale of such cases as *Arrington, Penn* and *SASSO*, above cited.

Fireman H2 examination and the actual requirements of the job to be performed.

Conceivably, such a showing might be made but defendants have not made it up to this point. The response of the named defendants has been mainly a showing that efforts have been made by the Fire Department to attract minority-group persons to apply for the Fire Department and to take the 1968 examination. (See affidavits in Calden, Casper and Noguchi attached to defendants' memorandum in opposition to the motion for preliminary injunction). Indeed, defendants made clear with great candor at hearings on this motion that they are aware of the disproportionate representation of such minorities in the department and that they are desirous of making it more representative if that can be done without impairing departmental efficiency.

### DISPOSITION OF MOTION FOR PRELIMINARY INJUNCTION

Upon the present record a preliminary injunction would ordinarily issue restraining the use of the 1968 Fireman H2 format for future examinations—not upon the ground that the format is constitutionally defective (an issue which this court would not have to decide at this point) but only upon the ground that a prima facie case had been made by plaintiffs sufficient to support such temporary relief but subject to defendants' right to justify the H2 examination format at a trial on the merits.

However, for reasons now to be set forth such a preliminary injunction need not be issued.

On July 23, 1970, following submission of the motion for preliminary injunction, the court, noting the expressed desire of defendants to resolve the issue if possible, requested the parties and intervenors to conduct discussions, through their counsel of record with a Civil Service Commission Task Force, concerning the practicability and advisability of modifying the 1968 examination format with a view to widening opportunity for minority group representation in the Fire Department without impairing departmental efficiency.

On October 21, 1970, this court made and filed its further Interim Order, reciting what it considered to be progress in such discussions up to that time, requesting continuance of such discussions and the lodging of a further report with the court on or before December 1, 1970.

Such report, dated November 30, 1970, and signed by counsel for both parties (together with attachment thereto entitled "Matters still unresolved" and further attachment indicating actions taken by the Task Force) has now been lodged with the court and is appended hereto and marked Exhibit A.

The court is pleased to note that these discussions between parties, intervenors and the Civil Service Commission Task Force, have been conducted constructively and in good faith and that they have been successful to the extent that there now appears to be substantial agreement that modifications of the 1968 Fireman H2 Classification Civil Service Examination format can be made with a view to widening minority group representation in the Fire Department without impairing departmental efficiency. The proposed modifications are set forth in detail in the above-mentioned report and are subject only to resolution of a few matters and to official approval and adoption by the Civil Service Commission.

The Court is of the opinion that, whatever controversy may now exist concerning the validity of the present H2 examination format, any ground for such controversy would be removed if these modifications were adopted.

In view of this report and after conference with counsel the court concludes that the interests of all parties and the public interest as well, will be served by an order that plaintiff's motion for preliminary injunction be denied—without prejudice however, to plaintiff's leave to renew said motion for reconsideration and further proceedings herein in the

event that for any reason the tentatively agreed modifications of the Fireman H2 classification examination format are not, within a reasonable period after this order, made substantially and effectively applicable for the next examination to be conducted for H2 Fireman.

It is so ordered.

## APPENDIX

### EXHIBIT "A" (consisting of 3 documents)

November 30, 1970

The Honorable William J. Sweigert
  Judge of the United States District
  Court for the Northern District of
  California
United States Courthouse
450 Golden Gate Avenue
San Francisco, California   94102

Dear Judge Sweigert:

Re: WACO v. Alioto (Firemen's Discrimination Case)

In accordance with your Honor's instructions, all of the parties and their counsel have made diligent efforts, since the last time we appeared before you, to narrow the areas of controversy as much as possible. Specifically, the attorneys for both the plaintiffs and the defendants have met with the Civil Service Commission, members of the staff of the Commission, representatives of the firemen and the Task Force designated by the Civil Service Commission to formulate proposals for increased minority-group participation. In addition to innumerable smaller conferences, meetings were held on October 28, on November 12, and again on November 18. Still further meetings are contemplated during December. Although the Civil Service Commission itself has not yet been able to act on most of the proposals, substantial agreement has been reached between the plaintiffs and the Task Force on most of the matters which were in dispute between them. Attached to this letter is a statement indicating all actions taken by the Task Force, all of which actions are acceptable to plaintiffs. The only unresolved areas are set forth on a separate page. Although the matters adopted by the Task Force are not official and must be adopted by the Civil Service staff, we have reason to believe that the Civil Service Commission is likely to accept such recommendations.

Your Honor has obviously been extremely helpful in bringing about an agreement, and we think the presence of the Court will continue to be helpful in seeing that the agreed upon matters are appropriately implemented with sufficient speed. Accordingly, we would suggest that in whatever order the Court issues, it refer to or incorporate the attached agreed-upon matters. The Court could state that (without in any way precluding any other action of the Civil Service Commission which adopts the proposals made by the Task Force (and contained in the attached exhibit) that such adoption of the proposals would, in the Court's opinion, be in compliance with legal requirements at issue in this litigation. Because the recommendations call for certain periodical reviews in order to evaluate the results of the new testing procedure, it would probably be appropriate for the Court to retain juris-

diction to the limited extent of seeing that the commitments made are in fact carried out in expeditious fashion.

We want again to thank your Honor for bringing about a substantial resolution of much of this matter. If the Court has any questions, we would certainly stand ready to respond or supply any additional information.

Respectfully,

Sidney Wolinsky

(s) ———————————————

Sidney Wolinsky
Attorneys for Plaintiffs

Michael C. Killelea

(s) ———————————————

Michael Killelea
Attorney for Defendants

November 30, 1970

RE:     H-2 FIREMEN EXAMINATION—
MATTERS STILL UNRESOLVED

The matters agreed upon between the Task Force and the plaintiffs in the recent fire discrimination suit are contained in a memo on the letterhead of the Human Rights Commission to Task Force members from Frank Anderson. Those matters which are still not completely resolved include the following:

1. The 5th recommendation of the Task Force is that the Civil Service Commission staff be allowed flexibility in setting the numerical cutoff. Plaintiffs take the position that the cutoff should be no greater than 50% in order to keep the test from, in effect, turning into a rating rather than a qualifying examination. All parties agree that the test shall be on a qualifying basis. Since the Civil Service Commission staff may in fact choose a cutoff at 50% or less, this matter may not become an issue.

2. In recommendation of the Task Force number 6, the Task Force was unable to decide upon the weight of the oral exam as opposed to the athletic test because it had not completed a full study of the athletic test. Plaintiffs take the position that the physical exam should count at least 50% of the total consideration for the relative weighting of applicants. Again, since the Civil Service Commission may well decide to endorse this position but is simply awaiting further information, the matter may not become a disputed issue.

3. Of course, it is understood that the agreement of the plaintiffs is conditioned upon the acceptance of the Task Force recommendations and their formal adoption by the Civil Service Commission and implementation by the Civil Service Commission staff in a way which carries out the spirit of those recommendations.

City and County of San Francisco

## HUMAN RIGHTS COMMISSION OF SAN FRANCISCO

1095 Market Street

Suite 501

San Francisco, California 94103

Telephone 558–4901

To: Task Force Members and other Concerned Parties

From: Frank Anderson

Re: H–2 Fireman Examination

The following changes in requirements have been adopted by the Civil Service Commission upon the recommendation of the Task Force. These changes are aimed at encouraging greater minority representation in the H–2 Fireman classification.

1. RESIDENCE:

OLD: Applicants must have resided within 30 airline miles of the San Francisco City Hall (as shown on the official map) for the last three (3) years.

NEW: Applicants must have resided in San Francisco for the last three (3) years.

2. MINIMUM REQUIREMENTS:

OLD: Completion of a regular high school course of study approved by the Department of Education of the state in which the high school is located as evidenced by diploma or other official document.

NEW: Completion of a high school course of study approved by the Department of Education of the state in which the high school is located, as evidenced by diploma or other official document. (G.E.D., G.L.E.T., and E.E.T. will be accepted as high school equivalents).

3. NOTES:

OLD: A driving record which includes either three moving violations or negligent operator probation status within the last year will be disqualifying. A driving citation which has been dismissed as a result of attendance at traffic school must be listed. The "last year" is any one year period immediately prior to the computation date as given, or any date between that date and the date of appointment to the Fire Department.

NEW: Applicant must show a consistent history of careful and responsible vehicle operation. A driving record which includes negligent operator probation status within the last year will be disqualifying. A driving citation which has been dismissed as a result of attendance at traffic school must be listed. The "last year" is any one year period immediately prior to the computation date as given or any date between that date and the date of appointment to the fire department.

In addition, the language under DRIVING RECORD which says "Applicant must give a complete record of *all* motor vehicle violations" should be deleted.

### 4. SCOPE OF EXAMINATION:

OLD: Written test based on general knowledge and intelligence which may include questions on grammer, spelling and arithmetic as well as questions on other subjects indicating aptitude for this work.

NEW: The Task Force recommended that an outside consultant firm be utilized, to design the H–2 Fireman written examination, based upon the criteria submitted to the Task Force, November 11, 1970, by the San Francisco Neighborhood Legal Assistance Foundation. The consultant firm obtained should be agreeable to both the San Francisco Neighborhood Legal Assistance Foundation and the Civil Service Commission. The necessary funds for the project to be sought through the Board of Supervisors.

5. OLD: 50% cut-off................1000 points

NEW: The Civil Service Commission staff be allowed flexibility in setting the numerical cut-off dependent upon the number of H–2 Fireman positions available (this refers to the passing marks for the written examination).

### 6. QUALIFICATIONS APPRAISAL:

Appraisal of the personal history and personal traits of applicants by oral interview in order to judge their competence and fitness to perform the duties of the position............( ) Points. The weight of the oral will be decided after a study of the athletic test is completed.

A recommendation to the civil service commission and staff, not necessarily to be a part of the announcement specifications is that each oral board team should consist of a civilian, a San Francisco Fire Department member, and a member of a Fire Department from a Bay Area City, at least one of whom shall be a minority group member.

It is also recommended that oral board members be selected from a list submitted to the general manager of the civil service commission by the Human Rights Commission Coordinator of Employment, the Civil Service Commission Assistant Director of Recruitment and Examination, and the San Francisco Fire Department Director of Community Relations.

It is further suggested that the Oral Board be required to ask the same questions of all candidates.

### 7. ARREST RECORD:

The section on arrests should be deleted and the following paragraphs be added to the section on the background investigations:

The applicant's conviction record, if any, will be evaluated as part of the background check in which evidence of a pattern of serious violations of the law, especially if recent, may be grounds for disqualification.

"Arrest Records" will be obtained on each applicant who has passed the foregoing tests. The policy statement on convictions and employment is attached to this announcement.

8.  PHYSICAL MEASUREMENTS:

OLD: Minimum height—5′7″, minimum weight 145#, maximum weight 173#

NEW: Minimum Height—5′6″, Minimum weight—140#, Maximum weight 171#

9.  NOTES:

OLD: Applicants will be measured to the quarter inch and weighed to the full pound as favors applicant. Allowances in height are not granted to applicants under the minimum height of 5′7″ nor over the maximum height of 6′6″.

NEW: Applicants will be measured to the quarter inch and weighed to the full pound as favors applicant. Allowances in height are not granted to applicants under the minimum height of 5′6″, nor over the maximum height of 6′6″.

10.  CLASSIFICATION OF LUMBROSACRAL SPINE X-RAYS:

OLD: Classes IV and V must reject.

NEW: Classes IV and V subject to mandatory review by civil service physicians and/or appropriate specialists.