**WESTERN ADDITION COMMUNITY ORGANIZATION et al., Appellees,**

v.

**Frank N. ALIOTO et al., Appellants.**

**WESTERN ADDITION COMMUNITY ORGANIZATION et al., Cross-Appellants,**

v.

**Frank N. ALIOTO et al., Cross-Appellees.**

**WESTERN ADDITION COMMUNITY ORGANIZATION et al., Appellees,**

v.

**Frank N. ALIOTO et al., Intervenor (Firefighters), Appellant.**

**WESTERN ADDITION COMMUNITY ORGANIZATION et al., Appellees,**

v.

**Frank N. ALIOTO et al., Intervenor (Balich), Appellant.**

Nos. 74–1570, 74–1529, 74–1562 and 74–1563.

United States Court of Appeals, Ninth Circuit.

March 27, 1975.
Rehearing Denied May 30, 1975.

William H. Hastie, Jr., San Francisco, Cal. (argued in 74–1529), Barry S. Jellison, San Francisco, Cal. (argued in 74–1562 and 74–1563), Thomas M. O'Connor, City Atty., San Francisco, Cal. (argued in 74–1570), for appellant and cross-appellee.

Thomas M. O'Connor, City Atty., Michael C. Killelen, Philip S. Ward, San Francisco, Cal. (argued in 74–1529), William H. Hastie, Jr., Public Advocates, Inc., San Francisco, Cal. (argued in 74–1562 and 74–1563), Robert L. Gnaizda, Public Advocates, Inc., San Francisco, Cal. (argued in 74–1570), for appellee and cross-appellant.

## OPINION

Before BARNES, VAN OOSTER-HOUT* and ELY, Circuit Judges.

* Honorable Martin D. Van Oosterhout, Senior U. S. Circuit Judge, Eighth Circuit, sitting by designation.

1. It is recited in one of the District Court's opinions that at the time of the 1970 census,

PER CURIAM:

The detailed history of the subject controversy, to this time, is carefully set forth in four reported opinions of the District Court. 330 F.Supp. 536 (N.D. Cal.1971); 340 F.Supp. 1351 (N.D.Cal. 1972); 360 F.Supp. 733 (N.D.Cal.1973); and 369 F.Supp. 77 (N.D.Cal.1973).

The suit, a civil rights class action instituted pursuant to 42 U.S.C. §§ 1981 and 1983, was originally filed in the District Court on June 24, 1970. The appellees sought to remedy a condition that then existed, i. e., that of the 1800 firemen then employed by the San Francisco, California Fire Department, only four were blacks.[1] In its first opinion, 330 F.Supp. 536, the court found that the written examination employed by the Fire Department to select new firemen from job applicants had a discriminatory effect. Concluding, however, that the discriminatory practice was not shown to have been intentional or invidious, the court declined to issue an injunction but reserved the power to make any such additional orders as it might deem necessary in the future. This disposition was apparently induced, in part, because of the expressed willingness of the appellants to so modify their previously existing selective process so as to eliminate its discriminatory effects. The principal object was the revision of the appellant's previously existing "Fireman H–2" written examination so as to make then truly job-related. Delay after delay ensued. The court eventually remarked that ". . . the San Francisco Civil Service Commission has three times failed . . . to demonstrate, as required by law, that its challenged Fireman H–2 written examinations have been truly job-related." 369 F.Supp. at 79. The court remarked further:

"The Commission's dilatoriness in these matters and apparent stubborn insistence upon arguments and alter-

San Francisco's racial composition was 43 percent minority (15 percent black and 28 percent other minority). 369 F.Supp. at 79 n. 1.

natives which this court has repeatedly found unacceptable, have created an intolerable situation; the adequacy of Fire Department manpower for the safety of the City is coming into question . . . ."

369 F.Supp. at 80.

In its fourth opinion, from which the above quotations are extracted, the court found that of the then existing 512 qualified applicants for Fireman H–2 positions, 118 were of so-called minority derivation and 394, non-minority. The court thereupon decreed that pending a further Order, the Commission should "forthwith fill existing Fireman H–2 vacancies—one (1) qualified minority applicant and one (1) qualified non-minority applicant alternatively from sublists of qualified minority and qualified non-minority applicants—until the sublist of qualified minority applicants has been exhausted." 369 F.Supp. at 81. It is from this Order that the appellants appeal.

The appellees cross-appeal from the District Court's subsequent refusal to make its temporary one-to-one hiring arrangement permanent.

■ The appellants did not seek a stay of the District Court's Order pending appeal. Rather, they complied with the Decree's directive. We learned this for the first time during the oral argument of the cause. We suggested from the Bench that the appeal had become moot.[2] The only response of the appellants, as well as of the Intervenor, to our suggestion was that the controversy remained alive because 10 of the 118 minority applicants had declined offers of Fireman H–2 positions that had been tendered to them by the appellants. This response to the court's suggestion of mootness is not acceptable. The District Court's Order should be fairly interpreted as requiring no more than bona fide offers of employment to the 118 applicants for the vacant Fireman H–2

positions—not the acceptance of the offers by all of the qualified minority applicants. This being our interpretation of the District Court's Order, we conclude that there remains no live and existing controversy in respect to the particular Order from which the appellants appeal.

■ On this appeal, the appellants assert that the District Court's Order mandates the employment of a racial preference in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution. Since the District Court's Order has been fully effected, however, no decision that we could now render as to the Order's constitutionality could alter the parties' rights and obligations under the Order. See DeFunis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974); North Carolina v. Rice, 404 U.S. 244, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971). It is purely speculative as to whether the appellees might seek, or the District Court might grant, an order of similar effect in the future. It is more likely, we think, given the passage of time, that the appellants will have performed an acceptable job-relatedness validation of their already-revised written examination for firemen applicants. Therefore, such extraordinary relief as that contained in the Order here appealed, aimed solely at the dilatory tactics of the appellants and the critical shortage of firemen that existed in 1973, will, in all probability, be unnecessary. See SEC v. Medical Committee for Human Rights, 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972). Accordingly, the principal appeal is dismissed as moot, and we express no opinion as to the constitutional validity of the District Court's Decree.

■ As to the cross-appeal, a District Court, sitting in equity, is vested with the widest latitude in exercising its discretion in respect to the vacating or modification of an equitable decree.

---

2. Since a finding of mootness would deprive our court of jurisdiction, there no longer being an actual "case or controversy," U.S.Const. art. III, § 2, we are obligated to consider the question of mootness, even though it was not raised by the parties. See Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

From the record before us we are not persuaded that the court clearly abused its discretion in denying to the cross-appellants, at the time they made their application for permanent relief, the modified decree which they sought. We therefore affirm the Order that the cross-appellants here challenge.

All parties to the appeal and cross-appeal, including the intervening union, shall bear the costs which they, respectively, have incurred in connection with the proceedings in this court.

So ordered.

BARNES, Circuit Judge (concurring):

I have grave doubts that this action (alleged as a class action but apparently not certified as such) is moot. I cannot in good faith say with assurance "that 'there is no reasonable expectation that the wrong will be repeated.'" United States v. W. T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953); nor that this case does not involve a short term order "capable of repetition, yet evading review." Southern Pacific Terminal Co. v. I.C.C., 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1910).

Interpreting the order before us on this appeal as my brothers do,

First: that this appeal is only from paragraph (1) of the order of November 19, 1973;

Second: that because the ten remaining minority applicants have declined offers of employment tendered them "the list of qualified minority applicants has been exhausted";

Third: that the district court may never again act as it heretofore has, to create a "future H–2 list" (even though it asserts it has the future right to do so under paragraph (2) of said order of November 19, 1973); and

finally, recognizing the necessity of husbanding judicial time and effort, Alton & Southern Railway Company et al. v.

International Association of Machinists and Aerospace Workers, 150 U.S.App.D.C. 36, 463 F.2d 872, 877–82 (1972), i. e., this "rationing [of] scarce judicial resources among competing claimants" (*See*: D. Kates: Mootness in Judicial Proceedings: 62 Cal.L.R. 1385, 1401, 1412 and 1442 (Dec. 1974); La Sala v. American Savings & Loan Ass'n, 5 Cal. 3d 864, 97 Cal.Rptr. 849, 489 P.2d 1113 (1971), I reluctantly concur in the result reached in the majority opinion.