FIREFIGHTERS INSTITUTE FOR RA-
CIAL EQUALITY, a corporation,
George Baker, Robert D. Morgan, Rob-
ert Grady, Sherman George, George
Redford Turner, Lawrence L. Britt, Ver-
non Ammons, Wendell H. Goins, Charles
Gay, George E. Horne, William L.
Young, Daniel S. Austin, Robert Ander-
son, John H. Harvey, Joseph P. Hughes,
Eugene Stanton, Preston Sims, each In-
dividually and on behalf of all other
persons similarly situated, Appellants,

v.

The CITY OF ST. LOUIS, MISSOURI, a
Municipal Corporation, Division of Fire
& Fire Prevention, Department of Pub-
lic Safety, City of St. Louis, Missouri,
Frank C. Cummings, in his capacity as
Acting Chairman of the Civil Service
Commission of City of St. Louis, Missou-
ri, Fred Gould, in his capacity as a mem-
ber of the Civil Service Commission,
City of St. Louis, Missouri, Charles Mar-
ino, in his capacity as Director, Depart-
ment of Public Safety, City of St. Louis,
Missouri, Denis D. Broderick, Individu-
ally and in his capacity as Fire Chief of
the City of St. Louis, Missouri, R. Elliott
Searce, Individually and in his capacity
as Director of the Department of Per-
sonnel, City of St. Louis, Missouri, and
United States of America, Appellees,

and

Joseph Blessing, Michael Davis, Robert
Crowley, David Banta, Andrew Rios,
George Hohmann, Don Blackwell, Nick
Altmeyer and George Tschlis, Each Indi-
vidually and as Members of a Class,
Intervenors-Appellees.

No. 78–1294.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 11, 1978.

Decided Nov. 29, 1978.

Rehearing and Rehearing En Banc
Denied Dec. 22, 1978.

David A. Lang, St. Louis, Mo., argued and on brief, for appellant.

James J. Gallagher (formerly of City Counselor's office), St. Louis, Mo., (argued), and Jack L. Koehr, City Counselor, St. Louis, Mo., on brief, for appellee, City of St. Louis.

Gerald F. George, Atty., Civ. Rights Div., Dept. of Justice, Washington, D. C. (argued), David L. Rose, Washington, D. C., Drew S. Days, III, Asst. Atty. Gen., Washington, D. C., and Robert D. Kingsland, U. S. Atty., St. Louis, Mo., on brief, for appellee, Dept. of Justice.

Jerome A. Diekemper of Barley, Goffstein, Bollato & Lange, Clayton, Mo., argued and on brief, for intervenor, Joseph Blessing.

Before HEANEY and STEPHENSON, Circuit Judges, and VAN SICKLE,* District Judge.

HEANEY, Circuit Judge.

This is the latest appeal in protracted litigation, challenging the employment practices of the St. Louis Fire Department. Members of the Firefighters Institute for Racial Equality (F.I.R.E.) and several named plaintiffs brought this action in January, 1974, against the City of St. Louis and various City officials, alleging racial dis-

---

* BRUCE M. VAN SICKLE, United States District Judge for the District of North Dakota, sitting by designation.

crimination against blacks in the hiring and promotion of personnel in the St. Louis Fire Department. F.I.R.E. also challenged the existence of racially segregated eating arrangements, or "supper clubs," maintained by white employees in the City's firehouses. The action was brought under 42 U.S.C. §§ 1981, 1983 and 2000e *et seq.* The United States subsequently filed suit under § 2000e *et seq.* as well, charging the City with the "pattern or practice" of discrimination in violation of Title VII of the Civil Rights Act of 1964. The cases were consolidated for trial. The intervenors, representing a class of non-black employees and candidates for employment in the Fire Department, were permitted to intervene on behalf of the City.

On April 9, 1976, the District Court entered an order in which it found for the City on all counts. This order was amended by a nunc pro tunc order issued by the District Court on June 28, 1976. In that order, the court found that the examination which the City had used for the entry level position of firefighter had a disparate racial effect and was not validated.[1] The order required that the City attempt to achieve a fifty percent hiring rate of blacks for firefighter positions over the next five years. F.I.R.E., the named plaintiffs and the United States appealed.[2]

On appeal, this Court affirmed the District Court with regard to the City's use of a particular examination for the position of battalion chief and with regard to the City's refusal to promote a particular individual, George Horne. *Firefighters Institute, Etc. v. City of St. Louis*, 549 F.2d 506, 515–516 (8th Cir.), *cert. denied*, 434 U.S. 819, 98 S.Ct. 60, 54 L.Ed.2d 76 (1977). We found, however, that the examination administered in

1974 for promotion to the position of fire captain had a racially disparate effect to the disadvantage of minority candidates, and that the City had failed to demonstrate that the test was sufficiently job related to justify its use. *Id.* at 509–513. We remanded the case to the District Court with directions that it maintain continuing jurisdiction until a valid examination is devised by the parties and approved by that court. *Id.* at 513–514. We also found that the maintenance of segregated supper clubs by white employees in the City's firehouses violated Title VII, and directed the District Court, on remand, to supervise the promulgation of regulations by the Fire Department which would prohibit the use of City's facilities for such activities. *Id.* at 515.

On October 21, 1977, the District Court entered an order which permanently enjoined the City from engaging in any practice with respect to promotion to the rank of fire captain which had the purpose or effect of discriminating against any black applicant on the basis of race. The order permanently enjoined the use of the 1974 test results as the basis for either permanent or temporary (acting) appointments to the position of fire captain, except as provided therein. It enjoined the City from making any permanent appointments to the position of fire captain unless made on the basis of a valid examination or, pending the development of a valid examination, unless fifty percent of such vacancies were filled with qualified blacks. The order provided that all black applicants who passed the 1974 test and who were on the 1974 eligibility list were to be deemed qualified during this interim period. In the event that all blacks on that list were offered employment and the defendants desired to make further

---

1. The mean scores for blacks and whites on the written examination given for the entry level position of firefighter in 1974 were approximately 56.70 and 71.95, respectively. The cutoff score used in 1974 eliminated approximately fifty-one percent of the black applicants and twenty-five percent of the white applicants. The parties stipulated that although the population of St. Louis is approximately forty percent black, only eleven percent of the uniformed

personnel employed in the St. Louis Fire Department as of November 30, 1974, were black.

2. The United States appealed only that portion of the District Court's order denying relief as to a promotional examination which had been given for the position of fire captain, and as to the maintenance of segregated "supper clubs" by white employees in the City's firehouses. No appeal was taken by any party as to the firefighter examination.

permanent appointments during this interim period, the parties were directed to determine an appropriate basis for the appointment of black firefighters who are otherwise qualified for promotion under time-in-grade and efficiency rating standards.[3] The order also provided that, to the extent practicable, the fifty percent goal established for permanent appointments during the interim period should also be followed for temporary appointments during this period. The court also directed the City to promulgate regulations to assure that any segregation in communal eating arrangements in firehouses ceased.

On January 26, 1978, the District Court entered an order setting aside its order of October 21, 1977. The court expressed its "deep disappointment with the intransigence of all parties and their continued unwillingness to conscientiously and industriously seek an acceptable procedure for filling the numerous vacancies existing in the position of Fire Captain, which vacancies should be filled if the safety of the persons and properties of St. Louisans is to be assured." The court then reiterated the provisions of its previous order, with the exception of those provisions governing the appointment of individuals to fire captain positions pending the development of a valid examination. Instead of requiring that any such interim appointments to permanent positions be made in accordance with a fifty percent black promotional goal, as specified in the previous order, the revised order provides that such appointments may be made as follows: A racially identified list of all firefighters, who have served five years or more as firefighters, is to be drawn up in the order of departmental seniority. The black firefighter with the most seniority and the white firefighter with the most seniority will then be offered the opportunity to be evaluated by the Assessment Center technique.[4] The individual receiving the higher evaluation is then to be promoted, regardless of his race. The firefighter who is not promoted remains eligible for the next fire captain vacancy and is evaluated along with the black firefighter and the white firefighter with the next highest seniority. The two unsuccessful candidates for that vacancy remain eligible for the next vacancy, and so on. The order contains no provisions governing temporary appointments to fire captain positions, except for a general prohibition against the use of the 1974 test results as the basis for any appointments to the position of fire captain, whether on a temporary or permanent basis.

## I.

F.I.R.E. contends that the remedy contained in the District Court's order of January 26, 1978, is inadequate on several grounds.[5] It contends that the procedure provided in the order for the promotion of individuals to permanent fire captain positions pending the development of a valid examination is inadequate in that it fails to guarantee that any black firefighters will be promoted. It argues that elimination of the effects of past discrimination requires the imposition of a fifty percent black promotional goal, similar to that provided in the District Court's previous order of October 21, 1977. F.I.R.E. also contends that since the firefighters who serve as acting fire captains gain valuable supervisory experience which will give them a competitive advantage on any test for fire captain positions which is developed later, these assignments should also, as far as practicable, reflect a fifty percent black ratio.

---

3. Basic qualifications for promotion to the position of fire captain have been five years of experience as a firefighter, satisfactory service ratings and a satisfactory score on the written examination administered in 1974.

4. The Assessment Center technique, lauded by both F.I.R.E. and the City's expert witnesses, is a selection procedure which uses individual and group exercises to simulate job responsibilities while assessors evaluate a candidate's perform-

ance. *Firefighters Institute, Etc. v. City of St. Louis,* 549 F.2d 506, 513 (8th Cir.), *cert. denied,* 434 U.S. 819, 98 S.Ct. 60, 54 L.Ed.2d 76 (1977). This Court has previously recognized the potential of the Assessment Center technique as a means for evaluating supervisory skill. *Id.*

5. The United States does not appeal from the District Court's order.

The City responds, first, that since the appellants adduced only general statistical information as to the disparate impact of the 1974 examination upon blacks,[6] there is no evidence of racial discrimination which would justify the imposition of a racial goal for promotions to fire captain positions. It contends that no violation of Title VII has been established since there is no evidence that any firefighters, white or black, have received promotions on the basis of the 1974 examination results, and since there is no evidence that any black firefighters would have been promoted but for the invalid test.

■ The City's contention that no violation of Title VII has been established which would permit an order requiring that qualified blacks be appointed to acting or permanent fire captain positions is without merit. We have previously held that the promotional examination for fire captain, which was administered by the defendants in 1974, had a racially disproportionate impact on blacks and was not job related. *Firefighters Institute, Etc. v. City of St. Louis, supra* at 509–514. The use of a testing device, although neutral on its face, which has a racially disparate impact on members of minority groups and which has not been properly validated by the employer, constitutes a discriminatory act for which Title VII affords a remedy. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 806, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971). The Supreme Court has recently approved of the use of racial preference as a means for remedying constitutional or statutory violations resulting in identified, race-based injuries to individuals held entitled to the preference. *University of California Regents v. Bakke,* —— U.S. —— 98 S.Ct. 2733, 57 L.Ed.2d 750, 778 (1978). *See also Davis v. County of Los Angeles,* 566 F.2d 1334, 1342–1343 (9th Cir. 1977), *cert. grant-*

ed, 437 U.S. 903, 98 S.Ct. 3087, 57 L.Ed.2d 1132 (1978); *Carter v. Gallagher,* 452 F.2d 315, 329–330 (8th Cir.) (en banc), *cert. denied,* 406 U.S. 950, 92 S.Ct. 2045, 32 L.Ed.2d 338 (1972), and cases cited therein. Other courts have upheld the use of preferential relief in hiring or in the making of promotions after finding that an employer had engaged in a discriminatory testing practice similar to that engaged in here. *See, e. g., United States v. City of Chicago,* 549 F.2d 415, 436–437 (7th Cir.), *cert. denied,* 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977); *Davis v. County of Los Angeles, supra ; Boston Chapter N.A.A.C.P., Inc. v. Beecher,* 504 F.2d 1017, 1026–1028 (5th Cir. 1974), *cert. denied,* 421 U.S. 910, 95 S.Ct. 1561, 43 L.Ed.2d 775 (1975); *Vulcan Soc. of N. Y. City Fire Dept., Inc. v. Civil Serv. Com'n,* 490 F.2d 387, 398–399 (2d Cir. 1973); *Commonwealth of Pennsylvania v. Flaherty,* 404 F.Supp. 1022, 1030–1031 (W.D.Pa. 1975); *Western Addition Community Organization v. Alioto,* 369 F.Supp. 77 (N.D. Cal.1973), *appeal dismissed as moot,* 514 F.2d 542 (9th Cir.), *cert. denied,* 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975).

■ The City's contention that preferential relief is unavailable because there is no evidence that any specific black candidate for promotion would have been promoted but for the invalid test is likewise without merit. In *Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the Supreme Court stated:

When the Government seeks individual relief [in a Title VII case] for the victims of the discriminatory practice, a district court must usually conduct additional proceedings after the liability phase of the trial to determine the scope of individual relief. The petitioners' contention in this case is that if the Government has not, in the course of proving a pattern or practice, already brought forth specific evidence that each individual was discriminatorily denied an employment op-

---

**6.** The adverse effect of the 1974 examination on black candidates for fire captain is detailed in our prior opinion. The mean score for blacks was 69.72; for whites, it was 76.59. Of

those blacks taking the exam, 25.5 percent received a passing score; 43.6 percent of the whites passed. *Firefighters Institute, Etc. v. City of St. Louis, supra* at 510 n.4.

portunity, it must carry that burden at the second, "remedial" stage of trial. That basic contention was rejected in the *Franks* case [*Franks v. Bowman Transportation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976)]. As was true of the particular facts in *Franks*, and as is typical of Title VII pattern or practice suits, the question of individual relief does not arise until it has been proved that the employer has followed an employment policy of unlawful discrimination. The force of that proof does not dissipate at the remedial stage of the trial. The employer cannot, therefore, claim that there is no reason to believe that its individual employment decisions were discriminatorily based; it has already been shown to have maintained a policy of discriminatory decision-making. *Id.* at 361–362, 97 S.Ct. at 1867.

The City next contends that even if there has been a violation of Title VII which would make the imposition of preferential relief a possible remedy, the District Court did not err in failing to impose such a remedy in this case.

Title VII has vested broad equitable powers in the federal courts in order "to make possible the 'fashion[ing] [of] the most complete relief possible.'" The federal courts have "'not merely the power but [also] the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future.'" *Albemarle Paper Co. v. Moody, supra* 422 U.S. at 418, 421, 95 S.Ct. at 2372. *Accord, Teamsters v. United States, supra* 431 U.S. at 364–365, 97 S.Ct. 1843.

We believe that the record in this case, viewed as a whole, provides ample justification for preferential relief such as that imposed by the District Court in its order of October 21, 1977. This litigation was begun in January, 1974, almost five years ago. Since that time, the number of black fire captains in the St. Louis Fire Department has decreased from four to one.[7] Approximately fifty of the 180 permanent fire captain positions in the Fire Department are now vacant. The City has known since October 3, 1977, when its petition for certiorari was denied, that a nondiscriminatory method for the selection of fire captains would have to be devised. Despite this knowledge, little progress has been made in developing such a method. Meanwhile, the City has apparently determined not to make any permanent appointments to fire captain positions,[8] notwithstanding the fact that twelve black firefighters qualified for promotion even on the basis of the discriminatory examination administered in 1974, and that since the filing of this suit, forty-three additional black firefighters have attained the necessary five-year service requirement. The net result of the City's inaction is the continuation of a policy of discrimination against those black candidates for promotion who have been the victims of discrimination in the past. The City's recalcitrance cannot be justified on the basis of operational considerations as the failure of the City to make permanent fire captain appointments has caused a deterioration in the Department's morale and impaired its efficiency.[9]

7. Of the 180 persons holding the rank of fire captain as of November 30, 1974, a total of four (2.2%) were black. Since that time, one of these black fire captains has been promoted and two have retired, leaving only one black individual now holding the rank of fire captain.

8. Intervenors state in their brief that the only reason they did not appeal from the District Court's order of January 26, 1978, was the assurance of the City's administration that under no circumstances would promotions be made pursuant to the District Court's interim plan. The City, in its brief, concedes this intention, stating "[s]ince the promotional procedure suggested by the Court, based upon seniority and the assessment center, was not acceptable [to] any of the parties and because of the fact that no voluntary agreement was reached between the parties, the City is now proceeding with the third alternative * * * and is developing a new promotional exam."

9. Deputy Fire Chief Allen Brandenmeyer testified that the failure of the City to make appointments to the rank of fire captain has caused deterioration in the morale of the Fire Department, impairing the Department's efficiency in emergency situations. Failure to make promotions has also resulted in a reduc-

We cannot ask those black firefighters who have been the victims of discrimination to wait forever for the vindication of their rights. In light of the City's apparent decision not to make any permanent appointments pending the development of a valid examination, and of the fact that the development of such an examination rests in the first instance with the City, we do not believe that mere reinstatement of the provisions of the District Court's order of October 21, 1977, as requested by F.I.R.E., will afford any greater relief than that afforded by the court's order of January 26, 1978, since under neither order is the City required to make any permanent appointments to fire captain positions. We believe that nothing short of an affirmative order requiring the immediate promotion of those black firefighters who are unquestionably qualified is necessary in order to redress the rights of those who have been the victims of the City's discrimination.[10]

The City concedes that the twelve black firefighters who passed the 1974 examination are qualified for promotion to fire captain positions. These individuals, if otherwise still qualified, should be offered immediate promotion. Since only one individual now holding the rank of fire captain is black, the addition of twelve black fire captains will increase the number of black fire captains to thirteen, or 7.2 percent of all fire captain positions. We do not think that increasing the percentage of blacks holding the rank of fire captain to 7.2 percent is unreasonable, in light of the fact that eleven percent of the uniformed personnel employed by the Fire Department at the time of trial were black, and that this percentage has undoubtedly increased as the fifty per-

cent black hiring goal for the entry level position of firefighter is implemented. *See United States v. N. L. Industries, Inc.,* 479 F.2d 354, 377 (8th Cir. 1973). In addition to the immediate promotion of the twelve black candidates, the District Court may also, in its discretion, require the immediate promotion of twelve white candidates who are also qualified on the basis of the 1974 examination. Guidelines governing the precise selection of these individuals shall be developed, if necessary, by the District Court.

Any additional promotions which the City desires to make prior to the development of a valid examination must be made in accordance with the Assessment Center technique, as set forth in the District Court's order of January 26, 1978. Written guidelines should delineate the criteria to be used in evaluating a candidate's performance, and those criteria should be objective to the maximum extent possible. *See Wells v. Meyer's Bakery,* 561 F.2d 1268, 1273 (8th Cir. 1977).

■■■ It is undisputed that those firefighters who serve as acting fire captains gain valuable supervisory experience which may give them a competitive advantage on any test for fire captain positions which is developed later. We, therefore, agree with the appellants that these assignments must be made in a manner which does not unfairly disadvantage black candidates for promotion. Evidence adduced at a hearing held on August 4, 1976, indicated that assignments to acting fire captain positions were based in part on the results of the 1974 examination, previously invalidated by this Court. The brief of the intervenors informs us that shortly after the issuance of

tion in the number of fire inspections made in commercial and residential areas, and those acting captains who have made such inspections have been handicapped by their lack of apparent authority.

**10.** We note that other courts have approved of the use of interim preferential hiring or promotional relief under similar circumstances. *See, e. g., United States v. City of Chicago,* 549 F.2d 415, 437 (7th Cir.), *cert. denied,* 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977); *Davis v. County of Los Angeles,* 566 F.2d 1334, 1343–

1344 (9th Cir. 1977), *cert. granted,* 437 U.S. 903, 98 S.Ct. 3087, 57 L.Ed.2d 1132 (1978); *Vulcan Soc. of N. Y. City Fire Dept., Inc. v. Civil Serv. Com'n,* 490 F.2d 387, 398–399 (2d Cir. 1973); *Commonwealth of Pennsylvania v. Flaherty,* 404 F.Supp. 1022, 1029 (W.D.Pa. 1975); *Western Addition Community Organization v. Alioto,* 369 F.Supp. 77, 80 (N.D.Cal. 1973), *appeal dismissed as moot,* 514 F.2d 542 (9th Cir.), *cert. denied,* 423 U.S. 1014, 96 S.Ct. 446, 46 L.Ed.2d 385 (1975).

the District Court's order on January 26, 1978, those assigned as acting captains were relieved of that responsibility, and firehouse seniority was instituted as the basis for these positions. The City has confirmed that firehouse seniority is now used. Since this seniority system would inevitably reflect the previous discriminatory practices of the City in the hiring of entry-level personnel, automatic appointment of those firefighters with greatest seniority to acting fire captain positions serves to perpetuate the effects of past discrimination in violation of Title VII. *See Griggs v. Duke Power Co., supra,* 401 U.S. at 430, 91 S.Ct. 849; *United States v. N. L. Industries, Inc., supra* at 361; *Chavez v. Temple U. High Sch. Dist. No. 218,* 565 F.2d 1087, 1093 (9th Cir. 1977).[11] We, therefore, direct the District Court, on remand, to enter an injunctive decree which requires that assignments to acting fire captain positions reflect a fifty percent black ratio as far as is practicable, pending the development of a valid examination.

The City stated, during oral argument before this Court, that it would have a properly validated examination for the position of fire captain developed by January 1, 1979. We have confidence that the District Court will require the City to keep its commitment in this regard.

Upon the development of such an examination by the City, the court shall promptly hear and resolve any objections which any party has to the plan. If any party objects to that court's determination, that party shall have ten days in which to file notice of appeal in this Court. An accelerated briefing schedule shall then be arranged with the Clerk of this Court.

We recognize that the affirmative relief which we order today may impinge upon the justified expectations of both black and white firefighters who are as well qualified for promotion as are those twelve black firefighters whose promotion we have ordered. Continued inaction, however, will serve neither to vindicate the rights of those black firefighters who have been the victims of past discrimination nor to give the people of St. Louis the fire protection which they deserve. Federally guaranteed rights "can neither be nullified openly and directly by state legislators or state executive or judicial officers, nor nullified indirectly by them through evasive schemes * * * whether attempted 'ingeniously or ingenuously.'" *Cooper v. Aaron,* 358 U.S. 1, 17, 78 S.Ct. 1401, 1409, 3 L.Ed.2d 5 (1958). We are confident that the City's expeditious good faith compliance with our mandate will eliminate the necessity for further imposition of such relief and will allow future promotions to be made on a nondiscriminatory basis which is fair to all candidates.

II.

F.I.R.E. next contends that the attorney's fee of $12,500 awarded to F.I.R.E. by the District Court is arbitrary and capricious. It contends that under *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), specific factors must be considered in making an award under § 706(k) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(k), and that no consideration of these factors is reflected in the District Court's order.

█ █ The guidelines for awarding attorney's fees, which are set forth in *Johnson,* have received repeated approval by this Court. *See Allen v. Amalgamated Transit Union Local 788,* 554 F.2d 876, 884 (8th Cir.), *cert. denied,* 434 U.S. 891, 98 S.Ct. 266, 54 L.Ed.2d 176 (1977). They should be fol-

---

11. We are not here concerned with a bona fide seniority system which is immunized from a finding of illegality by reason of § 703(h) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2(h). *See Teamsters v. United States,* 431 U.S. 324, 355–356, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). *Compare James v. Stockham Valves & Fittings Co.,* 559 F.2d 310, 352–353 (5th Cir. 1977), *cert. denied,* 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978) (seniority system, which was the product of collective bargaining, must be evaluated in the context of the company's extensive unlawful employment practices during the period of the negotiations and its intransigent adherence to segregationist policies, in determining whether it was in fact bona fide).

lowed. Moreover, the basis of the award of attorney's fees should be set forth in detail so that this Court can adequately review the record. Failure of the District Court to disclose the basis of its award may compel the conclusion that it has abused its discretion. *See Johnson v. Georgia Highway Express, Inc., supra* at 720. In this case, we have independently reviewed the record, however, and have determined that the $12,500 award made by the District Court is adequate compensation in light of the experience of F.I.R.E.'s counsel at the time of trial, the time and labor which we believe should be required for a case of this type, the customary fee for similar legal work in the community, and the other factors listed in *Johnson.* The District Court's denial of the twenty-five percent bonus requested by counsel for F.I.R.E. was also not an abuse of discretion.

We award F.I.R.E. $4,000 for attorney's fees for this appeal.

The order of the District Court is reversed to the extent that it is inconsistent with this opinion. The District Court is hereby directed to modify its decree to grant injunctive relief and to permit further proceedings as required by this opinion.

Reversed and remanded.