In re George Ray DAWSON and Mary Ann Dawson, d/b/a Dawson's Liquor and Groceries, Debtors.

Bankruptcy No. 82–02732–13.

United States Bankruptcy Court, W.D. Missouri.

Aug. 2, 1983.

possible application and the counties request for a statutory interest penalty is denied.

**180**

Robert A. Kumin, Jeffrey R. Marcus, Kansas City, Mo., for Mark Twain Plaza Bank.

James D. Scherzer, Kansas City, Mo., for debtors.

Rita A. Rhodes, trustee.

## ORDER DIRECTING PAYMENT OF ATTORNEY FEES

JOEL PELOFSKY, Bankruptcy Judge.

Attorneys for Mark Twain Bank have made application for an allowance of attorney fees in the sum of $7,584.00 and for reimbursement of expenses in the sum of $637.32. They submit that the Bank is oversecured and that allowances are appropriate under the provisions of § 506(b) of the Code, Title 11, U.S.C. Debtors agree that the Bank is an oversecured creditor and that the hourly charge is reasonable but dispute the necessity of the work.

The various notes and security instruments provide that debtors are obligated to pay "reasonable attorney's fees" if referral to an attorney for collection is necessary. The right to such fees is a matter of state law, *In re Morris,* 602 F.2d 826 (8th Cir.1979); *In re Roberts,* 20 B.R. 914 (Bkrtcy.E.D.N.Y.1982), but the amount to be allowed is to be established by bankruptcy law. *Carter v. Woods,* 433 F.Supp. 291 (D.C.W.D.Mo.1977); *In re Boffey,* 14 B.R. 2 (Bkrtcy.S.D.Fla.1981).

In their plan debtors proposed to pay the Bank in full over the life of the plan. As a result of the efforts of their attorneys the Bank was paid in a lump sum prior to confirmation. But the efforts of the attorneys were not restricted to the collection of the amounts due their client. They also spent extensive amounts of time developing evidence to defeat confirmation of the plan. They contend that their efforts were of general benefit to all creditors, causing debtors to revise their plan and resulting in a plan more beneficial to all.

Debtors own a tract of commercial property in a residential neighborhood. The property was a non-confirming use, that is, not zoned for commercial uses but able to be used for that purpose as preceding in time the zoning which applied to the area. It was destroyed in part by fire prior to the filing of the petition in bankruptcy. Debtors proposed to rebuild, using the main portion of the building for a bingo hall. The rentals from this activity were to fund the plan. In order to rebuild for this use debtors would have had to obtain, at the very least, a building permit from the City of Kansas City, or a variance on rezoning. Evidence produced at hearings suggested that debtors would not be successful in obtaining permission to remodel as they desired. Subsequent events demonstrated this to be true and debtors had to abandon the idea of a bingo hall.

The Bank's claim arose out of several loan transactions. One of these paid off by the maturing of a certificate of deposit which secured it and which was taken by the Bank as a set-off. Another was a loan where the debtors were co-signers with their son, he being the principal debtor, which was secured by an automobile returned to the Bank in lieu of debt. The Bank was undersecured on this loan.

The remaining loan transactions were secured by certificates of deposit, shares of stock and mortgages. The Bank also held and, during the course of these proceedings, refused to surrender insurance proceeds paid as a result of the fire loss in an amount well in excess of the amount of its claim. Thus, in cash or negotiable properties the Bank was well secured. Neither the debt

instruments nor those proceedings in relation thereto were complicated, despite the assertion of the Bank's attorney to the contrary.

█ There are two standards accepted without much dispute in the determination of attorney fees to be allowed in bankruptcy cases. One is that economy to the estate is no longer a significant criteria. Section 330 of the Code, Title 11, U.S.C.; House Report 95–595, 95th Cong. 1st Sess. (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, 329–30 reprinted in App. 2 Collier on Bankruptcy (15th Ed.). The other is that the starting point of the determination is an analysis of the number of hours reported and the rate charged. *Lindy Bros. Bldrs. Inc. v. Amer. R & S San. Corp.* 487 F.2d 161 (3rd Cir.1973); *Furtado v. Bishop,* 635 F.2d 915 (1st Cir.1980). Other criteria are then applied to this base figure to arrive at a reasonable fee. *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974); *In re Casco Bay Lines, Inc.,* 25 B.R. 747, 9 BCD 1301 (Bkrtcy.App.R.Me.1982).

Here application of the basic formula produced little dispute. Payment of the secured claims was assured. The primary issue was when payment was to be received. In their efforts to obtain payment in full at an early stage of the proceeding, counsel performed effectively for their client and produced some benefit to general creditors. The Court finds that the only adjustment that must be made to the basic formula is a determination of whether the work performed was of value in the collection of the debt or to the estate generally.

The bankruptcy case was filed on August 20, 1982. Prior to that time the attorneys billed 4.4 hours of time related to debtors' matters. There is no evidence that the debts were placed in the hands of attorneys for collection at this time, from May 26, 1982 through August 16, 1982, but only that there were various conversations and a review of materials, the identity of which are unknown. The Court notes that the attorneys make substantial charges for October 19, November 15 and November 16, 1982, to review the debt instruments and the Court

is unable to conclude that the billings from May 16 through August 16, 1982 are reasonably related to collection. The application for the hours from May 26, 1982 through August 16, 1982 are DISALLOWED.

█ From September 10, 1982 through January 3, 1983, the attorneys charged 44.6 hours to the Bank for work in relation to this case. During that period the attorneys charged 8.1 hours to review of Bank records and documents. The loan documents are standard printed forms consisting of 19 pages. Two of those pages are jurats only. Two security agreements, of two pages each, are identical. There is no evidence as to what documents other than these were reviewed, but undoubtedly ledger sheets were seen. None of these documents are very complex. Reasonable attorney fees must be calculated in terms of what an experienced attorney would charge for doing similar work. *In re Erewhon, Inc.,* 21 B.R. 79, 9 BCD 288 (Bkrtcy.Mass.1982). Here 8.1 hours of review of these documents strikes the Court as excessive. Two hours are DISALLOWED.

The application for fees must set out sufficient detail to enable the Court to determine that the time spent was necessary. In some instances this application is inadequate in that regard. The following charges are DISALLOWED as inadequately explained:

| | |
|---|---|
| 9–10–82 miscellaneous file work | .1 |
| 10– 6–82 miscellaneous file work | .3 |
| 10–14–82 miscellaneous research | .3 |
| 10–21–82 miscellaneous research | .2 |
| 11– 8–82 miscellaneous file research work | .5 |
| 11–11–82 conference | .5 |
| 12–14–82 miscellaneous file work | .5 |
| 12–28–82 phone with Carlin | .3 |

The hours disallowed are approximate as the application generally lumps an entire day's work into one entry. See *In re Erewhon,* supra.

On November 17, 1982, the attorneys charged one hour for hearing preparation. On the same day, in another entry, they charge 3.1 hours for preparation for hearing and attendance at the § 341 hearing. As a matter of experience the Court knows that

the § 341 hearing is, by necessity, brief. In light of the extensive charges prior to this time for review of the Bank claims, this preparation time is excessive. The charge of the one hour on November 17, 1982 appears to be duplicative and is DISALLOWED.

The application records that the charges from September 10, 1982 through January 3, 1983 are at $50.00 per hour. The best evidence of reasonableness is what an attorney charges his client. The debtor should not have to pay more. The hours charged in the period from September 10 through January 3 after the reductions noted above, 38.9 hours, are ALLOWED at $50.00 per hour.

After January 3, 1983, the attorneys spent most of their time in an effort to demonstrate that the plan could not be confirmed because the proposal for the use of the property was untenable. There was no longer any straight forward effort to collect the debt, but insofar as rejection of the plan would enable their client to be paid over a shorter period of time, such actions were of value to the Bank. The attorneys also pointed out defects in the plan as it affected the Bank and creditors in general.

To suggest that, except for their efforts, the Court would have approved the plan and deprived creditors, and especially the Bank, of access to assets is of some exaggeration. Prior to being nominated to this position in 1980, the writer spent 8 years on the City Council of Kansas City, Missouri, was a member of the Plans and Zoning Committee and represented the very district where this property is located. The Court, therefore, was very aware of the problems which debtors faced. In fact, after hearing some testimony in this regard, rather than proceed to a decision, the Court recessed the confirmation hearing and directed debtors to attempt to obtain a building permit or be rezoned, in which efforts they were unsuccessful.

In the period from January 3, 1983 through May 27, 1983, the attorneys charged 76.5 hours at $60.00 per hour. The following charges are DISALLOWED as inadequately supported.

| | |
|---|---|
| 1– 6–83 miscellaneous research | .5 |
| 1– 8–83 Phone with Paula | .2 |
| 3– 5–88 Research | .8 |
| 3–15–88 meeting with area land-owners | .4 |
| 5–10–88 miscellaneous bankruptcy research | .2 |

Several charges during this period seem to be for work relatively far afield from the collection of the debt, as for example, attendance at the zoning hearing, but since the overall effort resulted in the Bank being paid in full before confirmation, the Court cannot say with certainty that the work was not necessary. For the period from January 3, 1983 through May 27, 1983, 74.4 hours at $60.00 per hour are ALLOWED.

The Court ALLOWS attorney fees as follows:

| | |
|---|---|
| 38.9 hours at $50 per hour | $1,945.00 |
| 74.4 hours at $60 per hour | 4,464.00 |
| Total fees: | $6,409.00 |

Reimbursement for expenses in the total amount of $637.32 is ALLOWED. After payment of fees and expenses the balance of the funds held by the Bank are to be returned to debtor.