## In re GLOBAL INTERNATIONAL AIRWAYS CORPORATION, Debtor.

**Bankruptcy No. 83–02765–2–11.**

United States Bankruptcy Court, W.D. Missouri.

March 13, 1984.

*Kursh,* 9 B.R. 801 (Bkrtcy.W.D.Mo.1981). See, also *In Re Curry,* 18 B.R. 358 (Bkrtcy.N.D.Ga. 1982).

Griffin, Dysart, Taylor, Pennder & Lay, Kansas City, Mo., Locke, Purnell, Boren, Laney & Neely, Dallas, Tex., for debtor.

Berman, DeLeve, Kuchan & Chapman, Kansas City, Mo., for creditors committee.

## ORDER AUTHORIZING PAYMENT OF INTERIM ATTORNEY FEES

JOEL PELOFSKY, Bankruptcy Judge.

The two firms representing the debtor (Griffin, Dysart, and Locke, Purnell) and the firm representing the creditors' committee have made applications for interim allowances of attorney fees and for reimbursement of expenses as follows:

| Date | Applicant | Amount |
|---|---|---|
| 12–5–83 | Berman, DeLeve | $ 16,968.25 |
| 1–5–84 | Berman, DeLeve | 9,871.72 |
| 12–8–84 | Griffin, Dysart | 35,945.45 |
| 1–24–84 | Griffin, Dysart | 16,839.92 |
| 1–25–84 | Locke, Purnell | 113,817.44 |

The only objection has been of the Creditors' Committee to the hourly rate charged by Locke, Purnell. The Court has examined the applications, finds generally that the work performed was necessary and of

benefit to the estate, and the applications are sustained consistent with the guidelines for fee allowances hereinafter set out and as modified by the particular comments relevant to each application.

 The point of beginning is the language of § 330(a)(1) and (2) of the Bankruptcy Code, Title 11, U.S.C., which provides, in part, that

"After notice ... the Court may award ... to a professional person employed under section 327 or 1103 of this title, or to the debtor's attorney—

(1) reasonable compensation for actual, necessary services rendered by such ... attorney ... and by any paraprofessional persons employed by such ... attorney ... based on the time, the nature, the extent and the value of such services and the cost of comparable services other than in a case under this title; and

(2) reimbursement for actual, necessary expenses".

Applications for fee allowances are addressed to the sound discretion of the Bankruptcy Court, within, of course, the standards established by statute. *Matter of U.S. Golf Corp.,* 639 F.2d 1197 (5th Cir.1981). Economy to the estate is no longer a significant criteria. House Report 95–595, 95th Cong. 1st Sess. (1977) 329–30, U.S.Code Cong. & Admin.News 1978, 5787 reprinted in App. 2 Collier on Bankruptcy (15th Ed.). The starting point is an analysis of the nature of the work and the number of hours required as set out in the application. *Furtado v. Bishop,* 635 F.2d 915 (1st Cir.1980); *In re Dawson,* 32 B.R. 179 (Bkrtcy. WD Mo.1983). The Court is obliged to explain its reasoning. *Lindy Bros. Bldrs. Inc., v. Amer. R & S San. Corp.,* 487 F.2d 161 (3rd Cir.1973); *Firefighters Institute v. City of St. Louis,* 588 F.2d 235 (8th Cir.1978).

In *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974), the court set out criteria for fee awards in Title VII cases. Twelve factors were established. Within the Circuit the factors were applied in various cases concerning fee awards and

in *Matter of First Colonial Corp. of America,* 544 F.2d 1291 (5th Cir.1977) the Johnson factors were applied to bankruptcy cases. *Johnson,* supra, is followed in this Circuit. *Doe v. Poelker,* 515 F.2d 541 (8th Cir.1975); *Allen v. Amalgamated Transit Union Local 788,* 554 F.2d 876 (8th Cir.1977); *Firefighters Institute v. City of St. Louis,* supra. This Court may fairly assume that the Johnson factors would apply to an allowance of fees in bankruptcy cases in this Circuit.

The Court makes the following findings in reference to the Johnson factors:

1. The case is complicated by the number of creditors and the value of the assets. Substantial amounts of time had to be invested to master the detail. The Court has not questioned closely therefore the substantial time put in by various counsel including most of the overlapping efforts concluding that, at the outset, the effort was necessary to acquaint counsel with the problems.

2. The issues raised were difficult in that large amounts of money were involved and the details of the various transactions were complex. Several issues, such as service on an instrumentality of a foreign government, parole amendment of a written agreement in New York, and the impact of a bankruptcy filing on foreign creditors, were novel, although not without solution after diligent research.

3. A high degree of skill was necessary to perform many of the tasks involved here, such as mastering the complexities of the business and negotiating with foreign creditors. The majority of the work however, such as preparation of the schedules, required diligence and perseverance rather than great skill.

4. Because of the time demands other employment was precluded while counsel were working on this case but obviously other cases could be handled by other members of the firm. In addition the notoriety of the case will result in other business coming to the firms involved.

5. Fees in this judicial district are modest in comparison to other areas. The usual range is $50 to $80 per hour. In this case local counsel are charging $90 per hour or less. Due to the intensity and detail of the work, the Court will allow such hourly charges.

The application of the Locke, Purnell firm causes difficulty in that the hourly rate of lead counsel is more than double the customary rate in this district. The Court respects the talent and expertise of the practitioners but does not find that the work performed is twice as efficient or as effective as that of local counsel. If local counsel were retained, similar results could be obtained with the expenditure of some additional time. Consideration must be given to local sensibilities and the economics of the local bar. At the same time there must be consideration of the economics of out-of-state counsel and the customary fees in other jurisdictions.

The Court finds that, while in Kansas City, with consideration given to the expertise of Mr. Flowers, his hourly rate is set at $150 and Ms. Houser's hourly rate is set at $90. In their work in other jurisdictions, they will be awarded their usual hourly rate as that is the charge made to any client and is comparable to fees charged in those places.

6. The Court notes that the fees are fixed and not contingent.

7. The Court finds that there were severe time limitations imposed on all counsel at the outset and that vast amounts of time had to be invested within a short number of days.

8. The value of the assets here and the volume of business is large. There are no definitive results but the Court finds that the matters resolved have been handled expeditiously and in a lawyer-like manner.

9. The attorneys to whom fees are awarded here are of high caliber in the bankruptcy practice and include a local attorney of national repute and a former bankruptcy judge. They brought substantial experience to the case.

10. The case is desirable due to its size and the unique character of the debtor.

11. Only Griffin, Dysart has had a previous relationship with debtor. This factor is of no significance.

12. The Court is not aware of fees awarded in other airline bankruptcies. The Court is satisfied, however, that the work performed in this case was necessary, of benefit to the estate and to creditors, and that the fees are appropriate.

The detailed examination of the applications follows. The Court is aware of most of the work either because it involved pleadings and briefs or because it occurred in open court or in conferences attended by the Court. While the Court concedes the vast amount of time necessary to do the work, the Court is obligated to exercise its judgment in certain instances where there appeared to be work of little value or where the overlap of attendance by counsel appeared to be excessive. *In re Erewhon*, 21 B.R. 79, 9 BCD 288 (Bkrtcy.Mass.1982). In addition counsel were advised that the Court has a policy of reducing the hourly charge for travel time and has exercised that discretion here. A comparison of travel time charged to that allowed at reduced rates shows, that in some instances, the Court gave credit for work performed while travelling or to compensate for the impact of a long trip upon time available to do other work.

I

Counsel (Griffin, Dysart) for debtor have requested an interim allowance of fees for the period October 1 through November 30, 1983 in the amount of $35,138.75 and for reimbursement of expenses in the sum of $807.70. The Court has examined the application, finds that the hourly rates are reasonable and it is SUSTAINED with the following exceptions:

a. 3.5 hours, 10–18, ADL, disallowed as not specific as to work.

b. .5 hours, 10–21, ADL, work on state court litigation, not bankruptcy work, disallowed.

c. 1 hour, 10–23, AML, work on Rapp proceeding; not specific, disallowed.

d. 1.5 hour, 10–25, AML, charges for work on baggage claims and tour disallowed as not necessary legal work.

e. 1 hour, 10–26, PKM, charge for baggage claim research disallowed as not necessary legal work.

f. .5 hour, 11–2, PKM, charge for baggage claim research disallowed as not necessary legal work.

g. 1 hour, 11–18, AML, duplication, meeting with debtor, disallowed.

h. 1 hour, 11–14, AML, duplication, work on seizure of plane in Massachusetts, disallowed.

i. 1 hour, 11–22, AML, duplication, Carefree sale, disallowed.

j. 3 hours, 11–26, AML, disallowed as not specific as to work performed.

k. 2 hours, 11–27, AML, review of files disallowed as duplicative.

l. 3 hours, 11–28, HDL, disallowed duplicative attendance at indemnity hearing.

m. 6 hours, 11–19, HDL, travel to Washington, allowed at $60 per hour.

Fees are allowed in the sum of $33,008.75 and reimbursement of expenses is allowed in the sum of $681.50. The charge for secretarial service is DISALLOWED.

## II

In the application of January 24, 1984, covering the period December 1 through December 31, 1983, counsel (Griffin, Dysart) for debtor asks for an hourly rate of $100 for Mr. Lay and $90 for Mr. Lewandowski. The Court notes that in the earlier application for the period October 1 through November 30, 1983, the hourly rate for Mr. Lay was $90 and for Mr. Lewandowski was $80. No explanation is offered for the increase. Neither the lapse of time nor economics could justify the increase. The complexity and difficulty of the case had not changed from one billing period to the other. Counsel are obligated to substantiate their rates and have not done so. The work performed by Mr. Lay and Mr. Lewandowski are allowed at the rates of $90 and $80 respectively, consistent with the earlier application.

The application of the Griffin, Dysart firm for the period December 1 through December 31, 1983 is allowed as modified by the hourly rate reduction noted above and as set out hereafter:

The following charges are DISALLOWED:

a. ½ hour, 12–1, AML trip to courthouse to file papers—not chargeable at attorney rates.

b. 4 hours, 12–5, AML trip to Chicago—allowed at $55 per hour travel.

c. ½ hour, 12–6, HDL trip to courthouse to deliver papers—not chargeable at attorney rates.

d. ½ hour, 12–19, RAM deliver letter to trustee—there is no trustee.

e. ½ hour, 12–22, AML trip to courthouse to file pleadings—not chargeable at attorney rates.

f. The charge for postage is disallowed. Ordinary mailing costs should be part of the attorney rate and extraordinary charges must be itemized.

g. The charge for secretarial service is disallowed. It should be part of the attorney rate.

h. The charge for travel of $437.00, trip to Chicago, is disallowed as not supported by invoice. The Court notes that the present, no advance reservation, cost of round trip to Chicago is $150.00 coach.

Fees in the sum of $12,310.50 are allowed together with reimbursement of expenses in the sum of $919.06 are allowed for the period December 1 through December 31, 1983.

## III

Debtor's co-counsel (Locke, Purnell) have made an application for an interim allowance of $95,412 in fees and for reimbursement of expenses in the amount of $18,405.44. The Court has examined the application and it is APPROVED with the following exceptions:

a. Mr. Flowers' work in Kansas City is allowed at $150 per hour and Ms. Houser's work is allowed at $90. The Court calculates that Mr. Flowers spent 153.3 hours in Kansas City and Ms. Houser spent 171.3 hours. These result in charges of $22,995 and $15,417 respectively.

b. There are charges for 29 hours of travel by each of the two attorneys. Actually more travel hours are recorded but some of that travel time was also work time. On the assumption based upon experience that not all travel time is work, the Court has allocated the charges. As this Court advised counsel, travel time is allowed at approximately two-thirds the regular hourly rate, in this instance, calculated against the Dallas rate to be $140 per hour for Mr. Flowers and $80 per hour for Ms. Houser. These result in charges of $4,060 and $2,465 respectively.

c. The balance of the fees are allowed at the Dallas rate. The Court notes that this results in an average hourly rate of $132.45 as opposed to the charged rate of $160.27 and a decrease in fees of $16,560.50, or about 17%. The Court notes further that there are several occasions when there was some duplication of effort. The Court has not made any reduction for those charges as later activity reflected that both attorneys had to be aware of what transpired. In addition, since both counsel are from Dallas, it was more economical for them to work here in a sustained fashion than travel back and forth.

The application is SUSTAINED subject to the exceptions noted. Fees are allowed in the sum of $78,851.50. Expenses in the sum of $21.80 are to be reimbursed. Extra clerical services are DISALLOWED. Charges for shipping and for travel will be allowed upon submission of invoices supporting the charges.

## IV

Counsel (Berman & DeLeve) for the creditor's committee has made an application for an interim allowance of attorney fees in the sum of $16,308 and for reimbursement of expenses in the sum of $660.25 for the period October 27 through November 30, 1983. The Court has examined the application, finds that the hourly rate is reasonable and it is SUSTAINED with the following exceptions:

a. 2 hours, 11–1, RSW, duplicative attendance at meeting, charge disallowed.

b. 1 hour, 11–2, RSW, duplicative attendance at meeting, charge disallowed.

c. 6 hours, 11–10, PEB and RSW, travel, allowed at $60 per hour.

d. 1 hour, 11–23, MRR, disallowed charge for interoffice meeting.

e. 4 hours, 11–25, MRR, disallowed charge for part of meeting with debtor and counsel.

f. 2 hours, 11–28, RSW, duplicative attendance at court hearings, charge partially disallowed.

g. 1 hour, 11–29, MRR, duplicative work on Carefree sale, charge disallowed.

Fees in the sum of $14,778.00 are ALLOWED together with reimbursement of expenses in the sum of $660.25.

## V

For the period December 1 through December 31, 1983, counsel for the creditor's committee requests an interim allowance of $8,725.50 in fees and reimbursement of expenses of $1,146.22. The Court has examined the application and finds that the hourly rate is reasonable. The application is ALLOWED with the following exceptions:

The following charges are DISALLOWED:

a. 5 hours, 12–5, RSW, duplication attendance at Air Canada lease assumption, no explanation.

b. 2 hours, 12–17, RSW, duplication attendance at meeting with debtor. Some charge allowed because of differing responsibilities.

c. 2 hours, 12–17, MRR, duplication attendance at meeting with debtor. Some

charge allowed because of differing responsibilities.

d. ½ hour, 12–19, RSW, duplication of previous entry.

e. 1.50 hours, 12–28, RSW, duplication attendance at hearing on deposits. Some charge allowed because of differing responsibilities.

f. Federal Express charge of $48.00 is disallowed. Apparently only a one page letter was sent. The expense appears to be neither reasonable nor necessary.

Fees in the sum of $7,735.50 are ALLOWED together with reimbursement of expenses in the sum of $1,098.22 are ALLOWED.