CARNES, Circuit Judge,
dissenting:
As the majority correctly notes, the Bankruptcy Code provides that lawyers for the debtor and professionals employed by committees pursuant to 11 U.S.C. § 1103 are entitled to be compensated at a reasonable rate for actual, necessary services rendered, and they are entitled to be reimbursed for actual, necessary expenses incurred. See 11 U.S.C. § 330(a)(1). We allow the bankruptcy court to exercise discretion in arriving at the amounts to be paid, for obvious reasons. The bankruptcy court is the court that is most familiar with the prevailing market rates for bankruptcy legal work, the relative difficulty of the case before it, the quality of the attorneys’ representation, the efforts the attorneys have made to salvage the bankruptcy estate, and other factors that should be weighed in deciding the reasonableness of fees as well as the necessity and reasonableness of expenses. Because bankruptcy courts have in-depth knowledge about and extensive experience with these matters, and we do not, we review their fee and expense awards only for an abuse of discretion. See, e.g., In re Prince, 40 F.3d 356, 359 (11th Cir.1994). We should be, and usually are, reluctant to second guess bankruptcy courts on such matters.
However, the majority second guesses the bankruptcy court in this case about its method of ensuring a reasonable total payment for services rendered and expenses incurred by counsel. I would give bankruptcy courts more latitude about such matters. If a bankruptcy court, based upon its superior knowledge about and experience with such matters chooses to utilize a payment formula that estimates an expected average of expenses normally incurred in such work and reflects that amount in a suitably inclusive hourly fee rate, we should allow it to do so. Likewise, if a bankruptcy court chooses to skinny down the hourly fee rate and separately reimburse expenses that would in most other contexts be included in a larger hourly fee, it should be given the leeway to do that, too. The same is true of any compensation and reimbursement approaches that fall between those two. The Bankruptcy Code entrusts bankruptcy courts with the principal responsibility for carrying out its provisions in the thousands of cases filed in those courts. Wisely, the Code does not discourage bankruptcy courts from fully exercising their judgment and discretion about such matters as compensation and reimbursement methods for legal services. Neither should we.
Bankruptcy courts are not required to accept law firms’ explanations of their fees and expenses as the gospel truth. They often recognize that hourly fee rates are calculated with typical expenses in mind, including many of the expenses the separate reimbursement of which were disallowed by the bankruptcy court in this case. See, e.g., In re New Hampshire Elec. Coop., Inc., 146 B.R. 890, 903 (Bankr.D.N.H.1992) (holding that photocopying, computer research, and other expenses are compensated in fee award except when unusually high). As one bankruptcy court has explained:
“Overhead expenses” have been held to include, but are not limited to, library expense, rent and utility expense, secretarial and clerical expense, office supply expense, telephone expense, and the local commuting and meal expenses of individual employees. See In re Global International Airways Corp., 38 B.R. 440, 444 (Bankr.W.D.Mo.1984) (disallowed secretarial expense claim); In re Rego Crescent Corp., 37, B.R. 1000, 1009, 1012, 1018 (Bankr. E.D.N.Y.1984) (disallowed request for allowance of local transportation, library, secretarial and in-town meal expense); In re Horn & Hardart Baking Co., 30 B.R. 938, 942 (Bankr.E.D.Pa.1983) (disallowed request for allowance of clerical, support staff expense). These expenses have a common characteristic in that they are incurred by the firm on a day-to-day basis, no matter whom it represents. A law firm or accounting firm will require, for example, a permanent secretarial and clerical staff. The traditional way to spread these kinds of daily expenses among all the firm’s clients is for the firm to structure its hourly rates to take such expenses into consideration. Where a firm seeks to *1406 charge a single client, particularly one in bankruptcy, for expenses which are treated as overhead expenses by most other law firms, the natural inclination of the Court is to consider 1) that the firm’s hourly rates are unreasonably high; and 2) that the firm is attempting to charge the debtors for expenses actually incurred in the service of other clients. Fee applicants are hereby cautioned against the practice of including in their application requests for reimbursement of expenses, which should be absorbed as part of the firm’s overhead.
In re Thacker, 48 B.R. 161, 164 (Bankr. N.D. Ill. 1985).
Our role should be limited to a review of the overall amount awarded, a review designed to ensure that the total figure is fair— not excessive, but fair — whatever the method used. Instead of taking that broad view, the majority apparently requires that bankruptcy courts yield to whatever billing method or methods the firms appearing before it prefer to employ. Acknowledging that the “user billing” method of tracking expenses “is certainly not the only billing practice employed today,” the majority nonetheless mandates that the bankruptcy court treat that method as though it is the only one, if the law firms prefer to use it. Of course, if there are three or four firms seeking reimbursement of expenses in a given case, and each uses a different billing method, under the majority’s “law firm dictates” doctrine the bankruptcy court will be required to approve and accommodate three or four different expense billing methods.
While purporting to recognize that the bankruptcy courts have some discretion in such matters, in fact the majority’s “law firm dictates” doctrine gives all of the discretion about billing methods to the law firms. The bankruptcy courts are left with none. The majority has it backwards. A bankruptcy court ought to be allowed to insist upon any fair billing method it chooses for the case, absent some strong reason to believe that the firm’s particular method is the only appropriate one. Otherwise, the law firm tail will wag the bankruptcy dog. Bankruptcy courts do not exist to serve law firms, and we ought not make the judicial will bend to the desires of lawyers, especially not in areas where lawyers have a strong financial interest at stake.
About court prerogatives, look at it this way. Suppose some law firm sent us an appellate brief that was out of kilter with our rules. Accompanying the uniquely arranged brief was a letter explaining that the firm had found it most efficient to do all of its communications that way and would insist upon communicating in that manner with us. Just as we would not be deferential to the law firm’s method in that circumstance, we should not require the bankruptcy court to be in this circumstance.
According to the Statistics Division of the Administrative Office of the United States Courts, as of June 30, 1997, over 423 chapter 11 cases were assigned to the bankruptcy judge who handled this case. Faced with that case load, a bankruptcy judge should not be required to familiarize himself with and ride herd over 423 different billing methods, or a half dozen, or even two. A good reason for not adopting a law firm’s billing method in a case is that not every law firm uses the identical billing method with the same definition of overhead versus separate expenses.
After reviewing the record, I believe that the bankruptcy court did comply with the requirements in § 330(a)(1), and that its total awards were not abuses of discretion. I disagree with the way the majority interprets the bankruptcy court’s decisions in this case. In its first “Order on Interim Fee Applications,” issued on October 5, 1990, near the beginning of the case, the bankruptcy court decided both: (1) the hourly rate that would constitute a reasonable one for the law firms’ legal work, and (2) which types of expenses were not included in that hourly rate and would be awarded separately. The bankruptcy court quite generously determined that a blended hourly rate of $229 for Stroock & Stroock & Lavan, and a blended hourly rate of $292 for Kaye, Scholer would be reasonable. It also determined in that very same interim fee order that, for the purposes of pending and future requests for compensation, categories of expenses “which are properly attributable to overhead can not be reimbursed because they are built into Applicant’s hourly billing rate and should not be borne by the Debtors.” The court remarked, “This Court will not be placed in a *1407 position to be chastised by the District Court for establishing for professionals a Christmas feast in July similar to that which occurred in A.H. Robins Co., Inc., No. 85-01307-R (E.D. Va.[] Nov. 25, 1987) and in In re Johns-Manville Corp., No. 82 B 11656 through 82 B 11676 (S.D.N.Y. October 5,1990).”
The law firms were put on notice from the beginning, for example, that the court would not separately award most postal expenses, secretarial charges, word processing charges, local travel expenses, express mail charges, and computer research charges, because the court considered them overhead, i.e., part of the firms’ cost of doing business which was amply covered by the fees awarded. The bankruptcy court stood by its decision throughout the case, despite repeated requests by the firms to be reimbursed for expenses that they should have known would not be reimbursed, other than through their fees. The court awarded interim fees of $5,353,282 to Stroock & Stroock & Lavan, and $5,718,756 to Kaye, Scholer. For expenses not included in overhead and covered by the fees, the court awarded $445,838.42 to the Stroock firm, and $165,074.94 to Kaye, Scholer. The expenses disallowed were $341,953.01 and $514,636.97, respectively.
The majority is concerned that the bankruptcy court may not have considered whether the hourly rates that it awarded to the firms would adequately compensate the firms for the disallowed categories of expenses. I see no basis for that concern in the record. It appears to me that the bankruptcy court did carefully consider whether the generous blended hourly fee figures that it approved were adequate to cover the amount of necessary expenses that it described as overhead and did not intend to reimburse separately. I would therefore affirm the district court’s affirmance of the bankruptcy court’s final fee and expense order.
Even though I disagree with the majority’s approach and do not think a remand is required, the overall dollar result in this case may wind up being the same, anyway. As the majority has carefully phrased it, the remand is not for reconsideration of the expenses award alone, but for reconsideration of both compensation and expenses. While the bankruptcy court on remand is required to recognize the law firms’ user fee method, it is not required to approve the same hourly fee rates that it found appropriate when a non-user fee method of expense reimbursement was contemplated by the court. On remand, the bankruptcy court is free to adjust those large hourly rates downward in view of the additional amount of expenses that the majority has dictated must be counted separately instead of being included as part of overhead. As the majority says: “Nor would we rule out the court’s authority to adjust the [firms’] hourly billing charges if found excessive in light of the claimed expenses.” It is the total compensation that must be fair — not excessive, but fair.
Indeed, if the bankruptcy court approved the generous hourly fee rates it did based upon the assumption that some of the expenses it must now award separately were to be covered in those hourly rates, it might be irrational for the court not to adjust the hourly rates downward now that that assumption has been corrected. If the bankruptcy court finds that those hourly rates when considered in relation to a “user fee” system are excessive and should be reduced, that decision will be overturned only if it is clearly erroneous. And the majority has assured us that clear error is “a very high standard, and one we would rarely be likely to find, especially in a fees situation.”