**Linda ELDREDGE, individually, and on behalf of all others similarly situated, Plaintiffs–Appellants,**

v.

**CARPENTERS 46 NORTHERN CALIFORNIA COUNTIES JOINT APPRENTICESHIP AND TRAINING COMMITTEE, Defendant–Appellee.**

No. 93–16925.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 15, 1995.

Decided Sept. 9, 1996.

Alberta M. Blumin, Oakland, California, for plaintiffs-appellants.

1. See the procedural history following.

Victor J. Van Bourg, Van Bourg, Weinberg, Roger, and Rosenfeld, San Francisco, California; Lawrence H. Kay, Stanton, Kay & Watson, Sacramento, California, for defendant-appellee.

Before FLETCHER, REINHARDT, and KOZINSKI, Circuit Judges.

FLETCHER, Circuit Judge:

Twenty-one years and three appeals ago, Linda Eldredge brought this class action against the Joint Apprenticeship and Training Committee ("JATC"), alleging that the method it used to select carpentry apprentices had an impermissible disparate impact upon female applicants. Nine years ago, we agreed and remanded for a trial on remedies. *Eldredge v. Carpenters 46 Northern Cal. Counties Joint Apprenticeship & Training Comm.*, 833 F.2d 1334, 1341 (9th Cir.1987), *cert. denied,* 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 894 (1988). Now, the plaintiff class appeals the district court's remedial order, arguing it will actually reduce opportunity for women who seek to enter the apprenticeship program rather than afford increased access. Because the remedies adopted by the district court are unlawful, inadequate, and contrary to the principles we set forth in *Eldredge IV*,[1] we reverse and remand with instructions to adopt adequate remedies.

## I. FACTS AND PRIOR PROCEEDINGS

The JATC is a joint labor-management committee, established pursuant to a trust agreement, that administers a carpentry apprenticeship program in Northern California. The four-year program combines classroom training with on-the-job experience, and leads to journeyman status. Under the trust agreement, the JATC has full authority to select the apprentices. For decades, the JATC utilized a "first-job requirement" in its selection process, under which an applicant

could not obtain admission without first obtaining employment with a union contractor. The first job requirement is vital, for a jobless apprentice will obtain no on-the-job experience. An applicant could satisfy this requirement in one of two ways. First, if a contractor asked the union for an apprentice and did not name a particular individual, applicants were dispatched in numerical order from a referral list. Second, under the "hunting license" system, a contractor could ask for a particular apprentice by name.

In practice, most employers used the hunting license system most of the time. Because employers more often than not hand-picked male applicants, the selection system utilized by the JATC had a disparate impact upon female applicants. For the years 1976 through 1984, the female admission rate was only 54% of the male admission rate (i.e., while 39% of male applicants were admitted, only 21% of female applicants were admitted). Matters subsequently became even worse. For the years 1985 through 1990, the female admission rate was only 48% of the male admission rate (i.e., while 48% of male applicants were admitted, only 23% of female applicants were admitted). Because many fewer women than men applied, the number of women actually admitted to the program has been low: women have always been less than 3% of any entering group of apprentices.

In 1975, after unsuccessfully seeking admission to a JATC apprenticeship program, Linda Eldredge filed this class action against the JATC in federal district court. The plaintiff class alleged that the procedures used by the JATC to select apprentices had an impermissible adverse impact on women and therefore violated Title VII, 42 U.S.C. § 2000e–2(d).[2] In 1977, the district court dismissed the action under Federal Rule of Civil Procedure 19 for failure to join the 4,500 potential employers of apprentices. *Eldredge v. Carpenters 46 Northern Cal. Counties Joint Apprenticeship & Training*

*Comm.,* 440 F.Supp. 506 (N.D.Cal.1977) (*Eldredge I* ). In 1981, we reversed, holding that the employers were not necessary parties under Rule 19(a), and remanded the case for further proceedings. *Eldredge v. Carpenters 46 Northern Cal. Counties Joint Apprenticeship & Training Comm.,* 662 F.2d 534 (9th Cir.1981) (*Eldredge II* ), cert. denied, 459 U.S. 917, 103 S.Ct. 231, 74 L.Ed.2d 183 (1982).

In 1985, on cross-motions for summary judgment, the district court granted summary judgment for the JATC, holding that the JATC could not be held responsible for the actions of the employers. *Eldredge v. Carpenters 46 Northern Cal. Counties Joint Apprenticeship & Training Comm.,* No. C–75–2062–JPV, 1985 WL 25725 (N.D.Cal. Oct. 24, 1985) (*Eldredge III* ). In 1987, we reversed, holding that the JATC is responsible for the selection decisions it delegates to the employers. *Eldredge v. Carpenters 46 Northern Cal. Counties Joint Apprenticeship & Training Comm.,* 833 F.2d 1334, 1337 (9th Cir.1987) (*Eldredge IV*), cert. denied, 487 U.S. 1210, 108 S.Ct. 2857, 101 L.Ed.2d 894 (1988). We further held that the hunting license system has a disparate impact upon female applicants, and that its use is not a business necessity. *Id.* at 1338–41. We reasoned that "an alternate method [of selecting apprentices]—numerical referral from the new applicant referral list—is already in place." *Id.* at 1340. We remanded "for the entry of summary judgment for the plaintiff class on the issue of Title VII liability based on the JATC's use of the 'hunting license' system and for trial to determine the appropriate remedy." *Id.* at 1341.

In 1989, the district court entered summary judgment for the plaintiff class. In 1991, the court held a trial to determine the proper remedy. The plaintiff class proposed that the JATC retain the first-job requirement, but eliminate the hunting license system and rely solely on the already-existing

---

**2.** 42 U.S.C. § 2000e–2(d) provides:

It shall be an unlawful employment practice for any employer, labor organization, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs to dis-

criminate against any individual because of his race, color, religion, sex, or national origin in admission to, or employment in, any program established to provide apprenticeship or other training.

numerical referral list. The plaintiff class also proposed a temporary 20% affirmative action program, the appointment of a monitor, record-keeping and reporting requirements, active recruitment of female applicants, special orientation programs for new female apprentices, and a class on workplace discrimination and harassment for all apprentices. The JATC, on the other hand, proposed a two-track system, under which men would still need to meet the first-job requirement under the hunting license system, but women would not need to meet any first-job requirement.

Shortly after the trial, the JATC unilaterally implemented its own proposals. In 1993, the district court adopted the proposals of the JATC and rejected the proposals of the plaintiff class. *Eldredge v. Carpenters 46 Northern Cal. Counties Joint Apprenticeship & Training Comm.*, No. C–75–2062–JPV (N.D.Cal. Sept. 9, 1993) (*Eldredge V*). The plaintiff class appeals.

## II. DISCUSSION

■■■ We have jurisdiction, 28 U.S.C. § 1291. In the Title VII context, we review an award of remedies for an abuse of discretion. *Odima v. Westin Tucson Hotel*, 53 F.3d 1484, 1495 (9th Cir.1995). We also review factual findings for clear error and legal determinations de novo. *Fuller v. City of Oakland*, 47 F.3d 1522, 1527 (9th Cir.1995).

### A

■■■ The district court abused its discretion by adopting the two-track remedy implemented unilaterally by the JATC. This plan is not gender-neutral: under it, women may enter the apprenticeship program without first obtaining a carpentry job, and men may not. Such facially discriminatory remedies to Title VII violations must, at the very least, be both necessary and narrowly tailored to remedy an employer's past discrimination. *Local 28 of the Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 476, 106 S.Ct. 3019, 3050, 92 L.Ed.2d 344 (1986) (plurality opinion of Brennan, J., joined by Marshall, Blackmun, and Stevens, JJ.); *see id.* at 486, 106 S.Ct. at 3055 (Powell, J., concurring in part and concurring in the judgment). The

two-track system adopted by the district court is neither necessary, narrowly tailored, nor effective to remedy discrimination.

As we made clear in *Eldredge IV*, the hunting license system is the principal problem. *See* 833 F.2d at 1341 (remanding "for the entry of summary judgment for the plaintiff class on the issue of Title VII liability based on the JATC's use of the 'hunting license' system"). Happily, the most obvious solution happens to be a gender-neutral solution: eliminate the hunting license system and use instead the already-existing numerical referral list. As we explain below, *see* Part II.B, *infra*, this solution is entirely proper. There is therefore no need to embrace the mutilated version of the hunting license system unilaterally adopted by the JATC, under which men continue as before to take advantage of the hunting license system, while jobless women enter a program that is meaningful only with on-the-job experience.

Moreover, the district court's remedy is not tailored to undo the decades of damage caused by the JATC's discriminatory selection process. In fact, this two-track system would make matters worse. First, it would bring women into the apprenticeship program without the most important tool they need to succeed: on-the-job training. Men, on the other hand, would be fully capable of taking advantage of the program's unique synthesis of classroom instruction and practical experience. Second, the district court's remedy would discourage the JATC from seeking out and selecting female applicants, for the JATC receives most of its funding from employer contributions that are pegged to hours worked by employed apprentices.

### B

The district court abused its discretion by declining to enjoin the JATC from using the hunting license system. Hard data demonstrate that female applicants are only half as likely as male applicants to obtain admission into the apprenticeship program. In *Eldredge IV*, we held that "the differential results from use of the 'hunting license' system and not from some other element of the

admission process." 833 F.2d at 1338. We then held that use of the hunting license system is not a business necessity. *Id.* at 1340–41. Having determined that the hunting license system had an impermissible disparate impact upon female applicants, we remanded "for entry of summary judgment for the plaintiff class on the issue of Title VII liability *based on the JATC's use of the 'hunting license' system* ...." *Id.* at 1341 (emphasis added). We could not have been more explicit in expressing our determination that the hunting license system is the problem, and that elimination of the hunting license system is required.

The district court further abused its discretion by declining to order the JATC to require all applicants to satisfy the first-job requirement by using the already-existing numerical referral list. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) (to remedy a violation of Title VII, the district court "has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future.") (citation and quotation omitted). In *Eldredge IV,* we repeatedly noted the availability of the referral list as a substitute for the unacceptable hunting license system. *Id.* at 1340, 1341 & n. 12. Unlike the hunting license system, the numerical referral list will eliminate from the selection process any gender discrimination by the contractors. And unlike the two-track system proposed by the JATC, the numerical referral will not place unemployed female apprentices in a job-intensive training program where they cannot compete as equals with employed male apprentices.

It is true that this solution will limit the ability of employers to select the apprentices who will work at their sites. However, the numerical referral list has been in place and intermittently used by employers without objection for more than two decades. Moreover, employers have the power to refuse to hire any apprentice referred to them who does not meet their approval, as long as the refusal is not based on a discriminatory reason. While Robert Mounce, a JATC board member, testified that employers would ob-

ject to the loss of the hunting license system, he admitted that he had never spoken to an employer that used the referral list. He also admitted that employers have an economic incentive to hire brand-new apprentices, who are paid less than other carpenters; this incentive makes it unlikely that employers frustrated by the loss of the hunting license system will stop using apprentices supplied by the JATC. Accordingly, the district court clearly erred by finding that the referral list remedy would be "an entirely new hiring procedure," that it would "divest employers of any discretion to choose their employees," and that it would be "unworkable." *Eldredge V,* slip op. at 11.

### C

The district court abused its discretion by declining to implement the affirmative action plan proposed by the plaintiff class. *See Firefighters Institute for Racial Equality v. City of St. Louis,* 588 F.2d 235 (8th Cir.1978) ("*F.I.R.E.*") (reversing the district court's failure to implement an affirmative action program to remedy an employer's discrimination), *cert. denied,* 443 U.S. 904, 99 S.Ct. 3096, 61 L.Ed.2d 872 (1979). Under this plan, at least one out of every five applicants dispatched under the referral list must be a woman. If the first four applicants on the list are men, the next dispatch must be the highest listed female applicant. If there is no female applicant listed, the JATC must undertake affirmative efforts to encourage women to apply. The plan terminates when 20% of the apprentices are women.

Court-ordered affirmative action "may be appropriate where an employer or a labor union has engaged in persistent or egregious discrimination, or where necessary to dissipate the lingering effects of pervasive discrimination." *Local 28 of the Sheet Metal Workers' Int'l Ass'n v. EEOC,* 478 U.S. 421, 445, 106 S.Ct. 3019, 3034, 92 L.Ed.2d 344 (1986) ("*Sheet Metal Workers*") (plurality opinion of Brennan, J., joined by Marshall, Blackmun, and Stevens, JJ.); *see id.* at 483–84, 106 S.Ct. at 3054 (Powell, J., concurring in part and concurring in the judgment) ("numerical goals" may be proper to remedy an employer's "particularly egregious conduct").

As the Supreme Court recently explained in *Adarand Constructors, Inc. v. Pena,* —— U.S. ——, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995), federal courts may order affirmative action to remedy an employer's " 'pervasive, systematic, and obstinate discriminatory conduct.' " *Id.* at ——, 115 S.Ct. at 2117 (quoting *United States v. Paradise,* 480 U.S. 149, 167, 107 S.Ct. 1053, 1064, 94 L.Ed.2d 203 (1987) (plurality opinion of Brennan, J.)). In the words of Justice Scalia, "we have permitted federal courts to prescribe quite severe, race-conscious remedies when confronted with egregious and persistent unlawful discrimination." *City of Richmond v. J.A. Croson Co.,* 488 U.S. 469, 521, 109 S.Ct. 706, 736, 102 L.Ed.2d 854 (1989) (Scalia, J., concurring in the judgment) (citing *Paradise* and *Sheet Metal Workers* ). Such affirmative action programs have been upheld against Equal Protection challenges. *See, e.g., Stuart v. Roache,* 951 F.2d 446 (1st Cir.1991) (Breyer, J.), *cert. denied,* 504 U.S. 913, 112 S.Ct. 1948, 118 L.Ed.2d 553 (1992); *Newark Branch, NAACP v. Town of Harrison,* 940 F.2d 792 (3rd Cir.1991); *F.I.R.E.,* 588 F.2d 235 (8th Cir.); *Higgins v. City of Vallejo,* 823 F.2d 351 (9th Cir.1987), *cert. denied,* 489 U.S. 1051, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989); *Howard v. McLucas,* 871 F.2d 1000 (11th Cir.), *cert. denied,* 493 U.S. 1002, 110 S.Ct. 560, 107 L.Ed.2d 555 (1989). *Cf. Geier v. Alexander,* 801 F.2d 799 (6th Cir.1986) (using affirmative action to remedy a public university's past discrimination).

Affirmative action remedies are appropriate in this case. The JATC's reliance on the hunting license system has for decades kept women out of the carpentry trade. Fewer than 3% of the applicants admitted to the apprenticeship program are women. Female applicants are only half as likely as male applicants to obtain admission. The data for 1985–1990 were even more discouraging then the data for 1976–1984. It is no surprise that women constitute only 5% of the JATC's applicant pool.

In the face of the blatantly obvious effects of the hunting license system, the conduct of the JATC has been egregious and obstinate. Twenty-one years and three appeals after Linda Eldredge first filed her action, the JATC persists in exclusionary policies. Nine years after we remanded this case to determine the appropriate remedy for "Title VII liability based on the JATC's use of the 'hunting license' system," *Eldredge IV,* 833 F.2d at 1341, the JATC is still arguing for the retention of the hunting license system, albeit in mutilated form. Though we have twice rejected the JATC's claim that the real culprits are the employers, *Eldredge II,* 662 F.2d at 536 (holding that the employers are not necessary parties); *Eldredge IV,* 833 F.2d at 1337 (holding that the JATC is responsible for decisions it delegates to the employers), the JATC persists in claiming that we cannot render effective relief in the absence of the employers. After the district court took the parties' recommendations under submission, the JATC unilaterally implemented its own facially discriminatory proposals. The bottom line is that women historically have been systematically excluded from carpentry work and for more than two decades have sought relief through the courts while the JATC, the craft's gatekeeping organization, has waged a relentless battle to preserve the status quo.

■ When deciding whether an affirmative action remedy for an employer's past discrimination is appropriate, "we look to several factors, including the necessity for the relief and the efficacy of alternative remedies; the flexibility and duration of the relief, including the availability of waiver provisions; the relationship of the numerical goals to the relevant labor market; and the impact of the relief on the rights of third parties." *Paradise,* 480 U.S. at 171, 107 S.Ct. at 1066. *See also Sheet Metal Workers,* 478 U.S. at 476–79, 106 S.Ct. at 3050–52; *id.* at 486–88, 106 S.Ct. at 3055–56 (Powell, J., concurring). The proposal of the plaintiff class passes muster.

First, affirmative action is necessary in this case. Given the JATC's decades-long history of recalcitrance and foot-dragging, it is highly unlikely that the JATC will facilitate or even permit the entry of women into the apprenticeship program on equal footing with men without clear numerical goals. Moreover, as a direct result of the JATC's long-term use of the hunting license system,

women have had far less than an equal opportunity to enter the carpentry trade. This discrimination is probably the leading reason why women make up only 5% of the JATC's current applicant pool. The extreme shortage of female applicants certainly cannot be explained by any sort of biological determinism. Until a critical mass of women has successfully entered the carpentry trade, it is unlikely that other women will believe that the arbitrary barriers to their admission have been lifted. Without a temporary and narrowly tailored affirmative action program, the necessary critical mass of female carpenters cannot be achieved.

Second, the proposal of the plaintiff class is flexible and temporary. It terminates under its own terms as soon as women comprise 20% of the apprentices. It does not set an arbitrary deadline. If the JATC cannot satisfy the one-in-five ratio with its existing applicant pool, it need take only reasonable steps to recruit more female applicants. Rather than seeking a one-for-one parity between the genders, it simply sets "a benchmark against which the court [can] gauge [the JATC]'s efforts to remedy past discrimination." *Sheet Metal Workers,* 478 U.S. at 478, 106 S.Ct. at 3051.

Third, there is a proper relationship between the proposal's numerical goals and the relevant labor market. Guidelines of the United States Department of Labor addressing affirmative action in apprenticeship programs recommend "a goal for women ... at a rate which is not less than 50 percent of the proportion women are of the workforce in the program sponsor's labor market area...." 29 C.F.R. § 30.4(f). Unrebutted evidence at trial indicates that the one-in-five goal recommended by the plaintiff class is a conservative estimate based on this equation. While the JATC need by no means adopt a one-in-two ratio, it is equally clear that some critical mass of female carpenters is necessary to get the ball rolling in the right direction; a one-in-five ratio is a reasonable and modest accommodation.

Finally, the proposal of the plaintiff class imposes no undue burden on male applicants, who will still obtain up to 80% of the apprentice positions. The plan does not require the termination of men already admitted to the program, but only may defer temporarily the admission of some male applicants. Female applicants must meet the same minimum requirements as male applicants, including a high school or equivalent education, so qualified men will not be pushed aside to make room for unqualified women.

## D

The district court abused its discretion by declining to appoint a monitor to insure the JATC's compliance with the remedial order. Over the course of more than twenty years of litigation, the JATC has done everything in its power to avoid levelling the playing field so that women can compete for admission to the apprenticeship program as equals with men. *See* Part II.C, *supra.* Under these circumstances, a monitor is necessary.

## III. CONCLUSION

We REVERSE the adoption the two-track system proposed by the JATC, and we REMAND with instructions to adopt the following proposals of the plaintiff class: eliminate the hunting license system, require all applicants to use the sequential referral list to satisfy the first-job requirement, implement a 20% affirmative action program, and appoint a monitor.

The plaintiff class has suggested additional remedies, including a class for all apprentices regarding workplace harassment and discrimination. The district court shall reconsider the merits of these proposals in light of the foregoing. We REMAND these proposals for further consideration and instruct the district court to grant such additional relief as it determines appropriate.

The district court shall order the remedies mandated by this opinion within sixty days, and in due course such additional remedies as it deems helpful or necessary and consistent with the relief herein granted to achieve the expressed goals. It shall have continuing jurisdiction to monitor implementation of the remedies and supervision of the monitor. Subject to the limited remand here ordered, this panel retains jurisdiction of the case.

*Neuschafer v. McKay,* 807 F.2d 839, 842 (9th Cir.1987).